JOHNSON HILL'S PRESS, INC., Respondent, v. NASCO INDUSTRIES, INC., Appellant.

*January 2—January 31, 1967.*

For the appellant there was a brief by *Hoebreckx, Davis & Vergeront*, attorneys, and *Walter S. Davis* and *David E. Leichtfuss* of counsel, all of Milwaukee, and oral argument by *Walter S. Davis*.

For the respondent there was a brief by *Foley, Sammond & Lardner* and *John R. Collins*, all of Milwaukee, and oral argument by *Mr. Collins*.

CURRIE, C. J.  The evidence clearly established that plaintiff's predecessor, Farm Credit Services, Inc. (hereinafter "Farm Credit"), was the owner of the addressograph plates when the 1963 agreement between it and Nasco, Inc. (hereinafter "Nasco") was entered into.

Therefore, the crucial issue before the trial court was whether by reason of the agreement title to the plates was transferred to Nasco. Defendant-appellant contends the trial court's finding that title was not transferred is against the great weight and clear preponderance of the evidence because the finding was grounded on parol testimony which was inadmissible under the parol-evidence rule.

While the original agreement was oral it is defendant's position that it was subsequently integrated into a written invoice, and that because of such integration the trial court was required to rule out all testimony of the prior verbal agreement and of subsequent conduct establishing a practical construction of the agreement by the parties which was at variance with the terms of the invoice. Thus the narrowly defined issue to be decided on this appeal is whether the trial court violated the parol-evidence rule in arriving at its finding that the 1963 agreement did not encompass a transfer of title to the plates.

At the time of the 1963 agreement, Chester O. Bell was president and managing agent of Johnson Hill's, Inc., and was vested with authority to make binding agreements for the two subsidiaries, Farm Credit and Nasco. The verbal agreement was negotiated in preliminary form between Bell and Allan S. Haukom, then executive vice-president of Nasco and involved a transfer of $80,000 from Nasco to Farm Credit. In return for the $80,000 Nasco was to receive the use of names inscribed on Farm Credit's addressograph plates. However, before any of the names could legally be used by Nasco it was necessary to obtain the permission of the particular PCA of which the named person was a member. Income tax considerations apparently motivated the agreement. Subsequently other executives of Farm Credit and Nasco participated in formulating the details. As a result of these further negotiations the amount of the payment was changed from $80,000 to $79,800. Seventy-five thousand dollars

of the $79,800 was to be apportioned to the purchase price of the names. The remaining $4,800 was payment for advertising by Nasco to be run in four issues of Farm Credit's publication, PCA Farming Magazine, at $1,200 per insertion.

The exact dates when the foregoing transfer was negotiated is not pinpointed. Farm Credit's fiscal year ended June 30, 1963. The transfer was reflected in the income tax returns for that fiscal year which were required to be filed by September 30, 1963. Bell testified that the charge made against Nasco for the $79,800 "was made as of June 30, 1963." This is subject to the inference that it may have been made after that date and dated back.

The books of account such as the ledgers and journals of the two subsidiary corporations were kept at the office of Johnson Hill's, Inc., at Wisconsin Rapids. Inter-company transactions such as the instant one were handled by the use of debit and credit entries in these books so that no check was issued by Nasco to Farm Credit for the $79,800. The journal entries as of June 30, 1963, showed a charge to Nasco for advertising in four issues of PCA Farming Magazine of $1,200 per insertion or $4,800 and for sale by Farm Credit to Nasco of "500 M names @ 15¢" each amounting to $75,000. The word "plates" does not appear in these entries.

After commencement of the instant action in 1965 there was discovered in the files of Johnson Hill's, Inc., at Wisconsin Rapids, a printed form invoice of Farm Credit dated June 28, 1963, addressed to Nasco whereby Farm Credit purported to bill Nasco for "500,000 names and plates @ .15 each $75,000.00." Stamped on the invoice in black letters are the words "INTER-COMPANY." Below that is the imprint of a red stamp with the name "NASCO" at the top followed by ten subheadings, one of which is "COST" and another "PASS FOR PAYMENT." Under the subheading "COST" the figure $75,000.00 is

written in ink. Under the subheading "PASS FOR PAY-
MENT" are the initials "G T" also written in ink. Gust
L. Tekeley, in 1963, was vice-president and controller of
Nasco. Tekeley identified the initials "G T" as being his
handwriting. The invoice was marked and received in
evidence as Exhibit 12, and is the invoice exclusively re-
lied upon by defendant as establishing the integrated
agreement between Farm Credit and Nasco which de-
fendant contends cannot be varied by parol evidence
which negates the words "and plates" appearing on its
face.

No witness produced at the trial testified as to who had
prepared Exhibit 12. In 1963 Arnold Offerdahl was
treasurer of Johnson Hill's, Inc., and of its two sub-
sidiaries. He was called to testify as a witness for de-
fendant but nevertheless stated that to the best of his
knowledge the journal entry with respect to the $75,000
charge to Nasco was made without Exhibit 12. He could
not explain how Exhibit 12 got into the files of Johnson
Hill's, Inc., and testified that the first time he saw the
invoice was March 31, 1965.

Tekeley also testified for defendant but gave no ex-
planation of where Exhibit 12 came from. He stated how-
ever that he had forwarded it to the Johnson Hill's, Inc.'s
office. He testified further that the figure of 15 cents
per name included one cent for the cost of the plate. He
also testified that he, at all times, thought the plates re-
mained the property of Farm Credit and that when Farm
Credit moved from the premises rented from Nasco it
would remove the plates. Plaintiff moved March 31, 1965.
Prior to that date Farm Credit and Nasco occupied the
same premises, Farm Credit's occupancy being that of
lessee of Nasco.

Various acts occurred after June 30, 1963, which estab-
lish a practical interpretation by the parties to the trans-
fer agreement that the plates remained the property of
Farm Credit. After permission had been secured from
PCA for Nasco's use of some of the purchased names,

Nasco commenced making its own plates for the cleared names. On one occasion Haukom desired to use some of the Farm Credit plates for addressing Nasco catalogs and requested such use from Gerald A. Mortimer, vice-president of Farm Credit. Haukom suggested that Mortimer need not tell his superior, George M. Pellegrin, president of Farm Credit, about it. On April 2, 1964, in a letter to Johnson Hill's, Inc., Haukom explained a charge made by Nasco for depreciation of the mailing list acquired from Farm Credit as relating "to an internal accounting adjustment and *not an acquisition by us.*" (Emphasis supplied.) On March 30, 1965, the day before plaintiff was to move from defendant's premises, Haukom suggested to Mortimer that plaintiff could "avoid a double move" by allowing its mailing list plates to remain on the premises until plaintiff's new building was completed instead of moving them into temporary quarters. However, the next day when plaintiff was about to move the plates, Haukom refused to permit their removal, apologetically explaining to Mortimer that such refusal was pursuant to orders of the defendant's board of directors.

With this factual background in mind we now turn to resolving the legal issue of the application of the parol-evidence rule. Before the parol-evidence rule becomes applicable the parties must intend that the written document (in this case, the invoice) represents an integration of their prior agreement. Parol evidence is always admissible with respect to the issue of integration as supported by the following extracts from the authorities:

"It is an essential of an integration that the parties shall have manifested assent not merely to the provisions of their agreement, but to the writing or writings in question as a final statement of their intentions as to the matters contained therein. . . . That a document was or was not adopted as an integration may be proved by any relevant evidence." [1]

---

[1] Restatement, 1 Contracts, p. 308, sec. 228, comment *a*.

"The parol evidence rule does not apply to every contract of which there is written evidence, but 'only applies where the parties to an agreement reduce it to writing, and agree or intend that that writing shall be their agreement.' " [2]

An analysis of the evidence recounted herein clearly demonstrates that defendant has failed to meet its burden of proof that Farm Credit and Nasco intended the invoice, Exhibit 12, as an integration of their agreement. There is no testimony that this invoice was even prepared by anyone employed by Farm Credit at the direction of some executive who had power to bind Farm Credit, or that it was received by Nasco from Farm Credit. Both corporations occupied the same premises under conditions where Farm Credit's invoice forms might be readily obtainable by Nasco. All the record discloses is that Nasco's executive, Tekeley, approved the invoice for payment and sent it to the parent corporation at Wisconsin Rapids. What action was taken on it there we do not know. We would have a different situation if the evidence disclosed that the invoice was prepared in the regular course of business by Farm Credit and delivered by it to Nasco which then paid it.

One thing which appears clear from the record is that the parent corporation, Johnson Hill's, Inc., was "calling the shots" with respect to the transfer and that the transfer was recorded on the inter-company books as covering names without any reference to plates. Offerdahl testified he prepared the journal entries relating to the transfer, whereby Nasco was charged with $75,000, without reference to the invoice.

Furthermore, the subsequent acts of the Nasco executives are entirely inconsistent with defendant's present contention that the invoice was intended as an integration of the prior verbal agreement.

[2] 4 Williston, Contracts (3d ed.), p. 1010, sec. 633. See also 3 Corbin, Contracts, p. 522, sec. 588; Grismore, Contracts (rev. ed.), p. 148, sec. 94.

We conclude that there was no violation of the parol-evidence rule in admitting evidence which conflicted with the word "plates" in the invoice since proof is lacking on the integration issue. On the basis of the evidence which was admitted we do not understand that defendant advances any contention that the trial court's findings were contrary to the great weight and clear preponderance of the evidence. Therefore, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.