**LAKESIDE BRIDGE & STEEL CO.,**
**Plaintiff,**

**v.**

**MOUNTAIN STATE CONSTRUCTION CO., INC., Defendant.**

**Civ. A. No. 73-C-649.**

United States District Court,
E. D. Wisconsin.

Sept. 3, 1975.

274

Elwin J. Zarwell and Peter C. Kare-geannes, Milwaukee, Wis., for plaintiff.

Ward Dunphy, Milwaukee, Wis., Charles W. Yeager, Charleston, W. Va., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a diversity action arising out of a contract whereby plaintiff agreed to manufacture and supply to defendant certain structural assemblies for installation by defendant in the Gathright Dam and Reservoir in Gathright Lake, Virginia. Plaintiff has filed a motion for summary judgment and also a motion for sanctions for defendant's failure to provide discovery as ordered by the court. Defendant has moved for an order requiring the vice president of plaintiff to answer questions on oral deposition. For the reasons hereinafter stated, the motion for summary judgment must be denied, the motion for sanctions denied in part and granted in part, and the defendant's motion for an order compelling answers granted.

## FACTS

On June 8, 1970, plaintiff sent to defendant its Proposal No. 00354. This document quoted prices on bid items 34, 35, 37, 38, 51, 52, and 53 totalling $1,597,090. The printed form stated that "This proposal is not an offer." A typewritten part of the proposal provided for payment, on or before the 10th of each month, of 90% of the value of work shipped by the 25th of the preceding month, and further stated that "Amounts past due shall bear interest at the rate of 1% per month."

Subsequently, on June 27, 1970, one R. K. Shaw, the "Administrator—Special Contracts" of plaintiff, quoted defendant a price of $1,260,000 on bid items 34, 35, 38, and 51.

On July 7, 1970, defendant transmitted to plaintiff its Purchase Order No. 402 which ordered bid items 34, 35, 38, and 51 at a total price of $1,260,000 "per your quotation dated June 8, 1970." The order specified that the items were to be supplied subject to the plans, specifications, and approval of the Corps of Engineers, and set out a delivery schedule. The order also contained a liquidated damages clause for delay not beyond the seller's control which provided for payment at the rate of $610 per day.

On July 28, 1970, plaintiff wrote to defendant and enclosed a signed copy of defendant's July 7, 1970, purchase order No. 402. The letter indicated that plaintiff had accepted the order except for the liquidated damages clause which plaintiff stated it could not accept. The deletion of the liquidated damages clause from the parties' agreement was subsequently acceded to by defendant.

Thereafter, and continuing until November 22, 1971, plaintiff manufactured and shipped the materials for the dam project. Plaintiff also provided additional labor and materials for which defendant promised to pay $21,750, bringing the total principal sum to $1,281,750. Defendant has paid $995,811.90 of this amount.

Some of the materials which plaintiff supplied did not fit into the dam project as well as defendant had anticipated they would. As a result, corrective work had to be performed and the completion of the dam was delayed. Defendant began withholding payments and took the position that the agreement of the parties did not include a provision for the payment of interest.

Several meetings were held in order to resolve the dispute. Plaintiff did not contradict defendant's claim that some of the materials required additional work to be done on them, but instead advanced the theory that the Corps of Engineers had provided faulty specifications in that the specifications for plaintiff's manufacture in its shop were looser than the specifications for installation at the dam site.

At the close of a meeting on August 23, 1973, Gordon C. Behnke, the vice president of plaintiff, and Dean E. Lewis, the president of defendant, signd a handwritten agreement which stated:

"Gathright Dam—Corps of Engrs contract

DACW–65–70–C–0075

"Agreement the Lakeside Bridge & Steel Co. accepts a backcharge of $11,317.00 covering direct costs incurred to date for corrective work on the material supplied by us for Gathright Dam plus a maximum backcharge due to the delays resulting from this corrective work of (35 days at $390 per day) $13,650.00. This backcharge of $13,650.00 due to delays is to be reduced by any calendar days times $390.00 per day that the Corps of Engineers grants to Mountain States Construction Co. as time extensions to their contract completion date for occurances [sic] during the period from August 7, 1972 to September 22, 1972."

Defendant has submitted affidavits seeking to establish that (1) the agreement of August 23, 1973, was not intended as a settlement of any of defendant's claims for nonperformance of the agree-

ment and resulting costs, (2) the agreement only related to two items—the sluice gate liner and water quality control liner—and not to all the other material provided by plaintiff, (3) the agreement was intended to cover only some of the costs incurred by defendant due to the defective sluice gate liner and water quality control liner, and (4) at the August 23, 1973, meeting plaintiff agreed to prove to the Corps of Engineers that the corrective work and delays were a result of the Corps' faulty specifications, but that plaintiff has never done so.

In November of 1973, defendant made an offer to settle all the disputes for $205,985.39, which was rejected by plaintiff. Thereafter, on November 20, 1973, plaintiff commenced an action in Wisconsin state court against defendant, claiming that it had duly performed the contract and was entitled to the remainder of the principal. Further, the complaint sought interest allegedly due under the contract, which had amounted to $82,439.-19 as of November 14, 1973, and was accruing at the rate of $90.27 per day, along with costs and attorney's fees.

Defendant removed the action pursuant to 28 U.S.C. § 1441, and thereafter moved for dismissal on the ground of lack of personal jurisdiction or a transfer of the action. Defendant's motions were denied on September 6, 1974.

Subsequently defendant filed an answer and counterclaim. The answer denied that plaintiff had performed the contract, and also denied that the agreement of the parties had provided for the payment of interest. Defendent's counterclaim asserted that the materials provided by plaintiff had not conformed to the Corps of Engineers' specifications, and that as a result of the costs of adjusting and installing the materials supplied by plaintiff and the administrative cost thereby occasioned, defendant had been damaged in the amount of $750,000.

After plaintiff's motion to strike the answer and counterclaim was denied, it filed a reply and affirmative defense, in which plaintiff denied that the materials it had supplied had not been in conformity with specifications. The affirmative defense set out was that the claims made in defendant's counterclaim had been settled by the August 23, 1973, agreement.

On November 27, 1974, plaintiff served its first set of interrogatories on defendant. On December 5, 1974, plaintiff filed a motion for summary judgment in which it sought the relief demanded in its complaint and a dismissal of the counterclaim.

Defendant, on December 26, 1974, filed a motion seeking an extension of time in which to answer plaintiff's interrogatories. On January 3, 1975, the court ordered defendant to answer the interrogatories by January 10, 1975. On January 10, defendant filed answers to the interrogatories, several answers stating that the requested information was being compiled and was not available at present. Plaintiff then filed a motion for a default judgment or other relief because of the unsatisfactory answers to the interrogatories. Supplemental answers were filed by defendant on February 28, 1975.

Meanwhile defendant had filed a motion seeking to have Gordon C. Behnke, the vice president of plaintiff, compelled to answer questions which he had refused to answer at an oral deposition conducted on December 5, 1974. Behnke had been directed not to answer the questions by plaintiff's attorney on the ground that they were foreclosed by the agreement of August 23, 1973.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

■ The summary judgment motion filed by plaintiff sought both a judgment for the relief demanded in the complaint and also a dismissal of defendant's counterclaim. Summary judgment on the complaint is inappropriate since the answer denied that plaintiff had duly performed the contract and plaintiff has submitted no affidavits to establish that

it did. Since there is an issue of material fact concerning whether plaintiff performed the contract, summary judgment for the relief demanded in the complaint must be denied.[1]

The second part of plaintiff's summary judgment motion sought a dismissal of defendant's counterclaim on the ground that the August 23, 1973, agreement was a complete and final settlement of the defendant's claims that the materials supplied by plaintiff were not in accord with the requisite specifications. As indicated above, defendant has opposed this motion by filing affidavits which attempt to establish that the August 23 agreement was not intended to be a complete settlement of defendant's claims, if it was intended to be a settlement at all. Plaintiff has responded with the assertion that the facts contained in the affidavits filed by defendant are merely parol evidence which cannot be allowed to vary or contradict the terms of the written agreement. See, *Pines v. Perssion,* 14 Wis.2d 590, 111 N.W.2d 409 (1961).

■■ The parties have not briefed the issue of whether the Uniform Commercial Code's sales article, as adopted by Wisconsin, applies. Section 402.102 of the Wisconsin Statutes (1973) states that " * * * this chapter applies to transactions in goods * * *." "Goods" are defined in § 402.105(1) as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale * *." The crucial element in determining whether a transaction is governed by the Code is whether the subject of the transaction is "movable." Since the materials manufactured by plaintiff were shipped from plaintiff's Wisconsin plant to the dam site in Virginia, they were "movable." Thus, the transaction which is the subject of this action is one governed by the Code.

■ The Code's parol evidence rule is codified in § 402.202 as follows:

> "402.202 Final written expression: parol or extrinsic evidence

> "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

> "(1) By course of dealing or usage of trade (s. 401.205) or by course of performance (s. 402.208);

> "(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

It is important to note that before the Code's parol evidence rule becomes applicable, the writing must be determined to be one "intended by the parties as a final expression of their agreement."

■ A similar precondition to the application of the parole evidence rule is present in the common law. As the Court said in *Johnson Hill's Press v. Nasco Industries,* 33 Wis.2d 545, 550, 148 N.W. 2d 9, 12 (1967):

> "* * * Before the parol evidence rule becomes applicable the parties must intend that the written document * * * represents an integration of their prior agreement. Parol evidence

---

1. Besides the issue of whether the materials supplied by plaintiff were within the specifications of the parties' agreement, and issue exists as to whether their agreement included any provision for the payment of interest on the unpaid balance of the principal sum due under the contract. This issue will require the resolution of both factual and legal issue. Although the parties have agreed that Wisconsin rules of law apply, they have not briefed the applicability of §§ 402.204, 402.206, and 402.207 of the Wisconsin Statutes. In light of this, summary judgment for the relief demanded in the complaint is inappropriate.

is always admissible with respect to the issue of integration \* \* \*. "

In determining whether a writing was intended to be an integration of the parties' prior agreement, thereby making the parol evidence rule applicable, the Wisconsin rule is that the Court is not limited to an examination of the writing itself, but may also consider the subject matter and the facts and circumstances surrounding the execution of the writing. *Danielson v. Bank of Scandinavia,* 201 Wis. 392, 230 N.W. 83 (1930).

■ The Code provision, § 402.202, is consistent with the common law integration requirement of *Johnson Hill's Press v. Nasco Industries,* supra. Further, there is nothing in § 402.202 precluding the Court from examining parol evidence of the parties' prior agreement before deciding whether the writing was "intended by the parties as a final expression of their agreement." Thus, the issue on this motion for summary judgment is whether the affidavits and pleadings demonstrate that there is a genuine issue of fact concerning whether the August 23, 1973, agreement was intended by the parties as a final expression of their agreement.

Plaintiff here has relied solely on the writing itself as evidence of this, together with that part of the Behnke affidavit which states that he and Dean Lewis actually signed the document. As set out above, defendant has filed affidavits attempting to show, in essence, that the August 23 agreement was not intended as a settlement of all defendant's claims but only of some of them. The affidavits state that most of the August 23 meeting was concerned with plaintiff's representation that it would prove to the Corps of Engineers that the troubles with the materials it had supplied were the result of faulty specifications. Further, the affidavits relate that the discussion regarding corrective work and back charges only related to two items—the sluice gate liner and water quality control liner—and only to some of the costs which had been incurred by defendant.

■ This is a sufficient showing that there is an issue of fact concerning whether the agreement signed by Behnke and Lewis was an integration of the agreements reached during the negotiations on August 23, 1973. This issue can only be resolved at trial after hearing testimony. Plaintiff's motion for summary judgment dismissing defendant's counterclaim must therefore be denied.[2]

## PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff filed its first set of interrogatories with the court on November 27, 1974. They were received by defendant's attorneys on November 29, 1974. On December 26, 1974, defendant filed a motion for an order enlarging the time for answering the interrogatories to January 27, 1975.

At a hearing on January 3, 1975, the Court orally denied this extension and ordered defendant to answer the interrogatories on or before January 10, 1975. A written order to this effect was signed and filed on January 7, 1975.

On January 10, 1975, defendant filed its answers to plaintiff's interrogatories, signed by Dean E. Lewis, the president of defendant. Twelve of the twenty-six interrogatories were answered, in whole or in part, by statements that the information was being compiled

2. Even if it is concluded that the August 23, 1973, agreement was intended by the parties as a "final expression of their agreement," § 402.202 only excludes parole evidence inconsistent with the terms of the agreement, allowing evidence of course of dealing, usage of trade, and course of performance. § 402.-202(1). Further, evidence of consistent additional terms is excluded only if the Court finds the writing "to have been intended also as a complete and exclusive statement of the terms of the agreement." § 402.202(2). Since there is an issue of fact as to whether § 402.202 applies at all, no opinion is expressed on whether some of the facts contained in defendant's affidavits might not be admissible as supplemental to the terms of the agreement or as consistent additional terms.

and would be available at a later date. These twelve interrogatories concerned, for the most part, the claimed damages which are the subject of defendant's counterclaim.

Plaintiff then filed, on January 16, 1975, a motion for sanctions under Rule 37(b), Federal Rules of Civil Procedure. The motion sought a judgment by default pursuant to Rule 37(b)(2)(C) or, alternatively, an order under Rule 37(b)(2)(B) prohibiting defendant from introducing at trial any evidence relating to the damages alleged in its counterclaim. The motion also sought an order requiring defendant or its attorneys to pay the reasonable expenses, including attorney's fees, caused by defendant's failure to comply with the court's order.

Defendant's only response to this motion has been to file supplemental answers to the interrogatories. These were filed on February 28, 1975. Defendant has filed no briefs or affidavits in opposition to the motion for sanctions, nor has it attempted to explain why the interrogatories were not fully answered on January 10.

■ The Court is convinced that defendant's answers did not comply with this Court's order that the interrogatories be answered on January 10, 1975, and with the requirement of Rule 34, Federal Rules of Civil Procedure, that interrogatories be fully answered. This failure, however, is not a sufficient reason for entering a default judgment or an order excluding evidence in light of the fact that defendant has filed supplemental answers which have not been objected to by plaintiff. Insofar as plaintiff's motion for sanctions seeks a default judgment and an order excluding testimony, it will be denied.

■ With respect to that part of the motion which seeks reasonable expenses caused by the failure to obey the Court's order, Rule 37(b) requires the award of expenses unless the failure is found to be "substantially justified" or "other circumstances make an award of expenses

unjust." Defendant has submitted nothing from which the Court could determine either of these exceptions to be applicable. Plaintiff's motion for the reasonable expenses, including actual attorney's fees, caused by defendant's failure will therefore be granted. Plaintiff shall submit affidavits setting forth what attorney's fees and expenses were so caused and an appropriate order for signature.

## DEFENDANT'S MOTION FOR AN ORDER REQUIRING ANSWERS

■ At an oral deposition on December 5, 1974, Gordon C. Behnke, vice president of plaintiff, was directed by plaintiff's attorney not to answer certain questions on the ground that they sought to develop evidence regarding the defendant's counterclaim which, the attorney asserted, was foreclosed by the August 23, 1973, agreement. Since it has been determined that adjudication of the effect of the August 23 agreement will require the taking of testimony, the questions propounded at the December 5 oral deposition are not outside the scope of Rule 26(b)(1), Federal Rules of Civil Procedure. Defendant's motion for an order requiring Behnke to answer will be granted.

It is therefore ordered that plaintiff's motion for summary jurgment be and it hereby is denied.

It is further ordered that plaintiff's motion for sanctions is denied except to the extent it seeks the reasonable expenses, including attorney's fees, caused by defendant's failure to file timely answers to the interrogatories to which extent it is granted. Plaintiff's attorneys shall file affidavits setting forth what expenses were so caused, along with an appropriate order for signature after submitting it to defendant's attorney for approval as to form.

It is further ordered that defendant's motion to require Gordon C. Behnke to answer questions be and it hereby is granted.