## 7618

### WALLACE ads. DOWLING.

1. WRITTEN INSTRUMENT.—SECONDARY EVIDENCE of the contents of a lost letter to prove the written *memoranda* of a sale *held* competent here because: (1) admitted without objection; (2) when plaintiff offered a copy defendant merely interposed a general objection; (3) there was other testimony sustaining the allegations of the complaint not objected to; (4) defendant admitted the contract in his answer.

2. STATUTE OF FRAUDS.—A CONTRACT for sale of a machine to be delivered *in futuro,* need not be in writing when there is work and labor to be performed on the machine to such an extent as to cause the labor and work to enter considerably into the cost and price of the machine.

Before DeVore, J., Charleston, February term, 1909. Affirmed.

Action by W. P. Dowling against J. V. Wallace. From judgment for plaintiff, defendant appeals.

*Mr. Geo. F. von Kolnitz,* for appellant, cites: *Contract must be in writing:* Code, 1902, 2653; 1 Green. Ev., 108; 29 S. C., 533; 12 Ency., 22, 16; 22 Ohio St., 62; 72 Neb., 887; 101 N. W., 1001; 60 S. C., 373; 9 Rich., 105; Smith on Frauds, 533, 539.

*Messrs. Logan & Grace,* contra.

July 13, 1910.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an action on contract for the sale of a cameragraph.

The complaint contains the following allegations:

First. "That heretofore, to wit: on the 28th day of May, 1907, the plaintiff herein, made with the defendant herein, a contract whereby the plaintiff was to deliver to the defendant, one power cameragraph No. 5, with a 240-volt circular rheostat, and one shutter, for which defendant was to pay this plaintiff the sum of two hundred and thirteen dollars.

Second. "That in due course and according to said agreement, this plaintiff tendered to this defendant said cameragraph."

Answering paragraph 1 of the complaint, the defendant says: "The defendant admits that a contract was entered into, but alleges that the same was made orally, and was, therefore, null and void, since any contract of this nature, under the laws of the State of South Carolina, must be in writing."

W. P. Dowling, the plaintiff, testified as follows: "Q. Dou you know J. V. Wallace? A. I do.   Q. Did he ever get you to sell him a cameragraph? (Objected to on the grounds, that where the complaint alleges contract of sale of goods, over fifty dollars in value, under the statute, same must be in writing.)   Q. Mr. Dowling, this machine, this cameragraph No. 5, when Mr. Wallace saw you about this machine, was that machine in existence at that time?   A. It was not; it had to be built specially.   Q. Mr. Dowling, what was this machine that Mr. Wallace bought from you?   A. It was a power cameragraph, fitted with a special fireproof shutter; it had to have lenses of a peculiar focus, made for a long, narrow, low-ceilinged store, to make a small picture at a long distance, to be used under the masonic temple, and it

had to be peculiarly costructed, because the lenses made for the average work in theaters would not suit it at all. This order was given me by Mr. Wallace. * * * Q. Now, Mr. Dowling, was this cameragraph made specially by you? A. Yes, sir; the lenses were constructed for this long distance work. Q. For this special order? A. Yes, sir. Q. Why did it have to be made specially? A. Because the lenses sent out with machines are focussed so big that they could not be used except in theaters or other large places, and at this time they did not use many fireproof shutters, and they had to put one on it. * * * Q. What was Mr. Wallace to pay you for that cameragraph? A. He was to pay me $175.00 for the machine, $8.00 for the shutter, and $30.00 for the circular rheostat. Q. $213 altogether? A. Yes, sir. Q. He was to pay how much for the rheostat? A. $30. That is a special rheostat made to carry high voltage, and they did not ship them with the machine; they shipped a clean rheostat. Q. This rheostat that you speak of was a special rheostat to go with this machine? A. It was ordered specially; we do not usually sell them that way at all."

*Cross-Examination:* "* * * Q. So that it does not appear that they made this machine to order? A. He makes parts, and some parts he buys. Q. He made the cameragraph and equipped it with parts he got elsewhere, to suit this order? A. Yes, sir. Q. And that is the usual course of his business? A. No; they have a block and they take them on that block, and ship them out; it is the standard thing. Q. But the only difference was the equipment of the lenses and shutters and the rheostat? A. Yes, sir."

The jury rendered a verdict in favor of the plaintiff for $73.00, and the defendant appealed.

The first exception is as follows:

"That his Honor erred in allowing W. P. Dowling, the plaintiff, to testify over the objection of the defendant, as to the contents of an alleged lost letter, written subsequent to

alleged contract, to establish the existence of the contract sued upon. Whereas, it is respectfully submitted, that under the provisions of the statute of frauds, his Honor should have held that the letter should have been produced, and that secondary evidence of its contents was not admissible to establish the existence and the production of a written memorandum of the sale, made at the time."

This exception cannot be sustained for the following reasons : (1) Oral evidence as to the contents of the letter was admitted without objection. (2) When plaintiff offered to introduce a copy of the letter in evidence, the defendant did not specify the grounds, but merely interposed a general objection. This was not sufficient. *Allen* v. *Cooley,* 53 S. C., 77, 30 S. E., 721. (3) There was other testimony introduced without objection, sustaining the allegations of the complaint. (4) The answer of the defendant not only failed to deny, but admitted the contract. "Having acknowledged the agreement, the Court considers it such an assent in writing as overrules his plea of the statute of frauds." *Smith* v. *Brailsford,* 1 Dess. Eq., 350.

The second exception was withdrawn.

The remaining exceptions will be considered together, and are as follows :

Third. "That his Honor erred in refusing to charge the jury the fourth request of the defendant, to wit: 'The jury is instructed, that in order to recover any damages for an alleged breach of contract, the plaintiff must establish by the preponderance of the evidence, if the contract be for the sale and delivery of goods, wares and merchandise for the price of fifty dollars and upwards, that the said contract was in writing, or that the buyer received part of the goods so sold, or paid something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain was

made and signed by the parties to be charged by such con-
tract, or their agents hereunto lawfully authorized.'

Fourth. "His Honor erred in refusing to charge the
seventh request of the defendant, to wit: 'The jury is
instructed that the mere fact that goods are not at the time
of making the contract in the condition in which they are to
be delivered, does not take the case out of the statute, and
that if the bargain be to deliver certain goods, of a certain
description, at a future time, and they are not existing at the
time of the contract, but the seller does not stipulate to man-
ufacture them himself, or a particular person to do so, con-
tract is within the statute.'"

In regard to the request mentioned in the third of these
exceptions, his Honor, the presiding Judge, said: "I refuse
to charge you that, gentlemen, in this particular case, because
I have virtually covered, in my own language, the law in
regard to the statute of frauds here, which I conceive to be
applicable to this case." He refused the other request with-
out comment. In his general charge the presiding Judge
instructed the jury as follows:

"Now, for the purposes of this case, I charge you, that in
order to enter into a valid contract for the purchase of
goods, over or above the value of fifty dollars ($50.00),
that the contract is required by law to be in writing. * * *

"Now, I charge you further, that where the goods to be
delivered are to be manufactured, and that is a part of the
contract, that the goods are to be manufactured and then
delivered, that would take it out of the statute of frauds,
and the party would be entitled to recover under a contract
of that sort. * * *

"So I charge you that if the machine described in this
complaint here, was to be manufactured, or any extensive
part of it was to be manufactured, out of the ordinary run
of machines of that class, if the amount of work to be done
on it was an important item in the case, I charge you that
such a contract as that would not have to be in writing; but

if there was just a slight change to be made in it, it didn't have to be manufactured, such a slight change to be in the way of work and labor, that it would not make an item in the cost of the machine, why, under those circumstances, a contract of that sort would have to be in writing.

"Now, you understand, Mr. Foreman, that where the goods are to be manufactured, where there is to be work and labor performed on them to such an extent as to cause that labor and work to enter considerably into the cost and price of the goods or the machine, if that was the contract, it would not have to be in writing, if the goods or the articles didn't have to be manufactured, and yet there might be still a little work or labor to be performed, or a little change to be made, which would not enter into the cost of the articles, then a contract of that sort would have to be in writing."

The ruling of the Circuit Judge is sustained by the case of *Bird* v. *Mulinbrink,* 1 Rich., 199, in which it was held, that the fourteenth section of the statute of frauds, extends to contracts executory, as well as to contracts executed, for the sale of goods above the value of fifty dollars, which exists *in solido,* at the time of the contract. But if the contract is for the sale of goods *in futuro,* which are not in existence at the time, and for work and labor to be bestowed upon them by the vendor, or procured at his expense, so as to make the work and labor the essential consideration of the contract, it is not within the statute of frauds. Also, by the case of *Gadsden* v. *Lance,* 1 McM. Eq., 87, in which it is said, that "it is now the settled rule that when the goods contracted for, exist *in solido,* and are capable of delivery at the time, it is within the statute; but where they are to be made, or something is to be done, to put them in a condition to be delivered, according to the terms of the contract, it is not within the statute."

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.