COMPUTER SERVICENTERS, INC. of
Greenville, Plaintiff,

v.

BEACON MANUFACTURING COM-
PANY, Defendant.

Civ. A. No. 69–483.

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 9, 1970.

James M. Shoemaker, Jr., of Wyche, Burgess, Freeman & Parham, Greenville, S. C., for plaintiff.

Robert Frank Plaxco, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., and John E. Johnston, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This matter is before the court upon the motion of the defendant for summary judgment in accordance with Rule 56, Federal Rules of Civil Procedure. Though the facts are highly disputed between the parties, for the purposes of

this motion, they are considered by the court as claimed by the plaintiff, and are so stated below.

In early 1968, Beacon, through John Austin, Vice President of Administration for Beacon and in charge of Beacon's data processing operations, undertook certain negotiations with CSI with a view toward CSI performing data processing operations for Beacon in replacement of such operations then being presently internally performed on Beacon's own computer. On or about March 21, 1968, a written proposal prepared by CSI with a view toward CSI producing certain data processing results for Beacon was delivered to Mr. John Austin by CSI. Thereafter, in April 1968, Mr. Austin allegedly took up the matter in a meeting of the Management Committee of the defendant, at which time he received authority to enter a binding contract for the defendant with the plaintiff according to the terms of the proposal of March 21. Mr. Austin states that as secretary of the Management Committee he took, signed, and distributed minutes containing the decision and authorization to enter the contract with the plaintiff. Mr. Austin subsequently, on or about April 19, 1968, agreed orally to a contract with the plaintiff in accordance with the terms of the written proposal.

After extensive preparation and acquisition of additional equipment, the plaintiff provided the defendant with data processing services during the months of September, October, and November, 1968. These services were billed to and paid for by the defendant. At some point in November, 1968, the defendant notified the plaintiff that further services were not required, allegedly in breach of the oral contract. The written proposal of March 21 does not make clear what the duration of the contract was to be. However, it does appear, beyond doubt, that the proposed contract was not to be performed within a year. It is also clear that if the proposed contract was in force as alleged, the action of the defendant in November 1968, or its subsequent conduct constituted a breach.

In early November, 1968, Mr. Austin abruptly left the employ of the defendant. In December, 1968, at the request of the defendant, Mr. Austin attended a meeting with officers of the plaintiff and the defendant. The purpose of that meeting was the resolution of differences that had arisen between the plaintiff and defendant regarding the data processing arrangement. At that time Mr. Austin signed a statement acknowledging that he had entered for the defendant an oral contract embodying the terms of the written proposal of March 21.

The ground for the defendant's motion for summary judgment is that the statute of frauds renders the alleged oral contract unenforceable because it was not to be performed within a year. S.C.Code Ann. Section 11–101(5) (1962). In opposition to the motion, the plaintiff urges first that the applicable statute of frauds is that contained in the Uniform Commercial Code (S.C.Code Ann. Section 10.2–201 (Add.Vol.1966)) and that subsection 3(a) of that section excludes the subject contract from the requirement of a writing. The plaintiff's second argument is that both the minutes of the defendant's Management Committee prepared and signed by the defendant officer Mr. Austin and the acknowledgment of the oral contract signed by Mr. Austin December 7, 1968 are sufficient writings to satisfy the statute of frauds.

I

Article 2 of the Commercial Code deals with "transactions in goods." (S.C.Code Ann. Section 10.2–102 (Add.Vol. 1966)). "Goods" as used in the section means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action." (S.C.

Code Ann. Section 10.2–105(1) (Add. Vol.1966)). That definition is indeed broad, however, it must be noted that the article deals with, and the definition of goods is cast in terms of, the contract for sale. "Sale" "consists in the passing of title from the seller to the buyer for a price." (S.C.Code Ann. Section 10.2–106(1) (Add.Vol.1966)).

■ The fact of the matter here is that the alleged contract was simply not for the sale of goods as contended by the plaintiff.[1] Rather it was that certain services be provided the defendant by the plaintiff. The written proposal states that it is an agreement "for performance of data processing services." The proposal indicated that there would be a separate charge for supplies unless the defendant provided them. The payment contemplated was for the analysis, collection, storage, and reporting of certain data supplied the plaintiff by the defendant. It was not for the sale of goods, and to claim to the contrary strains the imagination. Due to the recent adoption of the Universal Commercial Code in South Carolina, the courts of this state have not considered the problem. However, the cases generally support the conclusion that the contract here alleged is not within the scope of the Commercial Code.[2]

The plaintiff does not argue nor does the court find that the allegations or performance rendered constitute sufficient part performance to take the contract out of the statute.[3] The performance was urged only as being sufficient under Article 2, Section 201(3) (a) to remove the requirements of the Commercial Code.

## II

■ The remaining consideration is whether either or both of the memorandums signed by Mr. Austin satisfy the requirements of the statute of frauds. The minutes of the management committee meeting upon which the plaintiff relies have not been produced and apparently cannot be found. The defendant earnestly contends that such minutes never existed. Be that as it may, the loss of the memorandum, if executed and sufficient to satisfy the statute of frauds, would not change or impair the obligation of the parties.[4] The deposition of Mr. Austin provides the only substantial account of the minutes relied upon by the plaintiff. From Mr. Austin's testimony it appears that the minutes signed by him constituted, not an agreement or even an offer, but only an authorization to him to enter a contract according to the terms of the March 21 proposal. His testimony was that he subsequently entered the oral contract sued upon.

As understood by this court, a memorandum giving authority to an agent to enter a contract does not meet the requirements of the statute of frauds with regard to a contract subsequently entered by the agent pursuant to that authority.[5]

Exception to that rule is made where the memorandum granting the agent authority constitutes such an offer as may be accepted by the other party without further agreement.[6] It appears that the discussion of the contract which took place at the meeting and would have been reflected in the minutes dealt with the savings expected from the proposed

1. *E. g.*, Associated Newspapers v. Phillips, 294 F. 845 (2d Cir. 1923).

2. *E. g.*, Epstein v. Giannattasio, 25 Conn. Sup. 109, 197 A.2d 342; Stagner v. Staples, 427 S.W.2d 763 (Mo.App.); National Historic Shrines Found. v. Gali, 4 U.C.C.R.S. 71 (N.Y.).

3. See Hillhouse v. Jennings, 60 S.C. 373, 38 S.E. 599 (1901) where it was held that part performance of an employment contract would not relax the requirement of the statute of frauds.

4. Restatement of Contracts, § 216 (1932); 49 Am.Jur., Statute of Frauds § 315 (1942).

5. 49 Am.Jur., Statute of Frauds, § 404 (1943).

6. *Id.*

arrangement and changes to be brought about by it. The minutes, therefore, could not have been construed as an offer or an acceptance of the plaintiff's earlier offer. It does not appear either that they were intended for communication to the plaintiff or that the plaintiff ever in fact knew of or relied upon them. The minutes, if in fact they existed, would constitute proof of Mr. Austin's authority to enter the contract sued upon, but could not constitute sufficient memorandum signed by the defendant to satisfy the requirements of the statute of frauds.

■ The second memorandum claimed by the plaintiff to satisfy the requirement of a writing was executed by Mr. Austin December 7, 1968. That memorandum, signed by Mr. Austin, states that he entered an oral contract for the defendant with the plaintiff according to the terms of the proposal of March 21, 1968, and that all work done by the plaintiff had been to effect performance of that contract. It is well settled that subsequent written acknowledgment signed by the party to be charged on an oral contract is sufficient to satisfy the statute of frauds with respect to that earlier contract.[7] In order to charge the defendant upon the statement signed December 7, 1968, by Mr. Austin, it must appear that Mr. Austin had authority, actual or ostensible, to bind the defendant and that he acted in pursuance of such authority in signing the memorandum.[8] From this record it is clear that Mr. Austin had no such authority as of December 1968. He had left the employment of the defendant without notice in early November of that year. He attended the meeting on December 7, at which time he signed the memorandum acknowledging the con-

tract, at the request of the defendant. However, he was summoned by the defendant, not to enter any contract, but to attempt to resolve differences with the plaintiff. The mere summoning of Mr. Austin by the defendant, would not convey to him authority to bind the defendant by his signature and the defendant could not be held bound by his account of what had transpired. The court does not find the defendant's argument to the contrary at all persuasive. The case of Blocker v. Hundertmark, 204 S.C. 269, 28 S.E.2d 855 (1944) is relied upon by the plaintiff to support the proposition that an agent, who within the scope of his authority, makes an oral contract, may after revocation of that authority, execute a memorandum sufficient to bind the principal. The case does not so hold. The court there stated that the evidence indicated that the agent had become the agent for the estate after the death of the original principal. Therefore, the agency continued until the signing of the memorandum by the agent.

Mr. Austin's statement may be a true account of contractual relationship between the parties. Were the requirements of the statute of frauds satisfied, his testimony in that regard should be very persuasive. However, at the time he signed the statement, he had no authority to bind the defendant. It was not done at the instance or with the knowledge of the defendant, but was the voluntary act of Mr. Austin. Therefore, the statement does not satisfy the requirements of the statute of frauds.[9]

It therefore appears that the defendant's motion for summary judgment must be granted.

And it is so ordered.

---

7. *E. g.*, Blocker v. Hundertmark, 204 S.C. 269, 28 S.E.2d 855 (1944).

8. 49 Am.Jur., Statute of Frauds, § 316 (1942).

9. Davis v. Moore, 9 Rich. 215, 17 S.C.R. 73 (1856); 37 C.J.S. Frauds, Statute of § 210 (1943).