DON MEEKER, Plaintiff-Counterdefendant-Appellant and Cross-Appellee, *v.* HAMILTON GRAIN ELEVATOR COMPANY, Defendant-Counterplaintiff-Appellee and Cross-Appellant.

Fourth District   No. 4—82—0083

Opinion filed November 22, 1982.

Harlan Heller, Ltd., of Mattoon (Mark E. Ferguson and Harlan Heller, of counsel), for appellant.

Roger B. Gomien, of Morris (Paul E. Root, of counsel), for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

The plaintiff sued under a contract to recover the purchase price of two grain bins that he had supplied and built for the defendant. The defendant moved to dismiss the complaint as barred by the statute of limitations; the trial court denied the motion. The defendant then counterclaimed, attacking the quality of the plaintiff's work and materials. The trial court found that the first bin was not built in a workmanlike manner and as a result blew over and that the second bin, though built in a workmanlike manner, was unmerchantable and as a result caved in. After assigning various losses and payments, the court awarded the defendant a net amount of $685 in damages. Both parties appealed, and the defendant renewed its assertion that the action is untimely. We agree with the defendant and therefore reverse the judgment.

The parties signed their contract August 25, 1971. The plaintiff confessed judgment against the defendant April 9, 1979, which the contract permitted, for the defendant's failure to pay for the bins. The confession was later vacated on the defendant's motion, and the various pleadings were then filed.

Section 2—725(1) of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1981, ch. 26, par. 2—275(1)) provides a four-year period for

bringing actions for breach of contract. Section 13—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—206) provides a 10-year period for contract actions not covered by the UCC. In denying the defendant's motion to dismiss, the trial court held that construction was the subject of the contract and therefore the UCC did not apply.

■■ The plaintiff first argues that the contract here is primarily for a service, the erection of two grain bins. *Bonebrake v. Cox* (8th Cir. 1974), 499 F.2d 951, 960, recognizing that many contracts for the sale of goods also require the performance of services, formulated this frequently cited test for deciding whether contracts that mix goods and services are within the scope of article 2 of the UCC:

> "The test for inclusion or exclusion is not whether [the contracts] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)."

■■ ■ In *Bonebrake* the seller's estate sued the buyer to recover on a contract for the sale and installation of bowling equipment (lanes and gutters, ball returns, racks, shoes, balls); the seller had died before the contract was completed. The circuit court reversed the district court's decision, entered on a special master's report, that the contract was for services and thus outside article 2. The court noted that the parties' contract used language that implied a sale of goods rather than a performance of services and said that the services contemplated—installation of the lanes, gutters, and racks—did not remove the contract from article 2. Thus, a contract may be covered by article 2 even though it requires the installation or assembly of large items; when the sale of goods is only incidental to the rendition of services, the contract falls outside the scope of article 2. See also *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.* (7th Cir. 1976), 532 F.2d 572 (one-million gallon water tank is goods); *Executive Centers of America, Inc. v. Bannon* (1978), 62 Ill. App. 3d 738, 379 N.E.2d 364 (contract for employment as golf professional at country club included sale to golfer of 20 carts for his work; sale of goods was only incidental to employment, so contract was outside article 2); *Pineau v. White* (1957), 101 N.H. 119, 135 A.2d 716 (contract for the sale and installation of a furnace was within article 2); *Schenectady Steel Co. v. Bruno Trimpoli General Construction Co.* (1974), 43 A.D.2d 234, 350 N.Y.S.2d 920, *aff'd* (1974), 34 N.Y.2d 939, 359

N.Y.S.2d 560, 316 N.E.2d 875 (appellate division held that agreement for furnishing and erecting steel for a bridge is for services rather than goods; in a memorandum opinion the New York Court of Appeals affirmed that result but said that the applicability of article 2 was immaterial in that case).

We conclude that the contract here was primarily for the sale of goods and therefore falls within the scope of article 2 of the UCC. The cases cited above and the language of the contract both support this result. The contract says that the defendant "agrees to purchase from the Seller, the following equipment"; a "description of equipment and labor sold" then follows and lists two "Meeker's Deluxe Storage Bins" and incidental equipment such as fans without mentioning labor or installation. Throughout the contract the parties are called "seller" and "purchaser." The plaintiff charged a sales tax on the total value of the contract. These terms signify that a sale of goods was predominant and services incidental.

■ The plaintiff argues, though, that the bins are not within article 2 because they were not movable at their time of identification to the contract, as required by the definition of "goods":

> "(1) 'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." Ill. Rev. Stat. 1981, ch. 26, par. 2—105(1).

*Bonebrake v. Cox* (8th Cir. 1974), 499 F.2d 951, also discussed identification and movability; the seller's estate argued that the bowling equipment was outside article 2 because the items were to be attached and made immovable. The court rejected this for two reasons: (1) under section 2—105, defining "goods," the items must be movable only at the time of identification, which in that case occurred before the equipment was installed, and (2) alternatively, the bowling lanes came in prefabricated sections, which were to be set in the floor and screwed together, meaning that they were movable until that time. In discussing this second reason the court observed that the contract was for used lanes, so their earlier use had not rendered them immovable.

The plaintiff's argument that the bins were not movable when identified assumes that they did not become identifiable bins until they were erected and bolted to their concrete pads; a pile of steel pieces that have been cut and shaped to specified dimensions and angles therefore does not constitute a grain bin. The steel is merely fitted together and connected, however, and thus resembles sections of

bowling lanes, which *Bonebrake* said were identifiable even though not yet assembled. As in *Bonebrake*, assembling and installing the parts was the service part of the contract here.

▮ The next question is when the cause of action accrued. The contract required an initial payment of $14,990, which the defendant made, and later payments of that same amount every October 1 for four years beginning in 1972. The plaintiff argues that the cause of action did not accrue until October 1, 1975, the scheduled date of the last payment. In that event, the action is timely, for the plaintiff confessed judgment April 9, 1979, within the four-year period set by article 2. Section 2—725(2) of the UCC (Ill. Rev. Stat. 1981, ch. 26, par. 2—725(2)) says:

> "(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Parties cannot extend the four-year limitation period. (Ill. Rev. Stat. 1981, ch. 26, par. 2—725(1).) To show that the action did not accrue until the due date for the last payment, the plaintiff quotes this provision from the contract;

> "In the event the Total Price above set forth is not paid within ten days of said due date the Purchaser further agrees to pay Seller interest on the unpaid portion of said Total Price at the rate of 8% per annum from due date until said Total Price is paid in full."

The plaintiff argues that this provision would have prevented him from accelerating the payments or repossessing the bins if the defendant missed a payment. The confession of judgment clause in the contract says, however:

> "In Consideration Whereof, I, the Purchaser, do hereby authorize irrevocably, any attorney *** to enter my appearance herein, at any time after date hereof, to waive all process and confess judgment or judgments, *** for such amount as may appear to be unpaid thereon and costs, with reasonable attorney's fees, and consent to immediate issue of execution on the judgment so confesses ***."

Finally, the agreement also says:

> "It is agreed until the full Total Price set forth hereinabove is received by the Seller, that the title to the aforesaid property

shall remain in the Seller, and Seller shall have a security interest therein, and in the event that the Total Price is not paid in full on or before the due date herein set forth, the Seller shall have the right to enter the premises of the Purchaser and dismantle, remove and repossess the aforesaid equipment."

Although the provisions quoted above refer to one due date, the agreement says, "Balance due $14,990.00, Date 10-1-72, 73, 74 and 1975." There were four due dates and not one.

■ The plaintiff's argument ignores the destruction of the two bins and the defendant's following acts. The first bin was destroyed in April 1972, and the second bin was destroyed about a year later. The trial court found that the plaintiff salvaged what was left of the first bin, and that the defendant rescinded its acceptance of the second bin. The defendant did not make a payment October 1, 1973. By that time, then, the plaintiff knew that both bins had been destroyed and that the defendant would not pay for either. From all this it appears that the parties' breaches occurred by the end of 1973, and therefore both the complaint and the counterclaims are barred by the four-year limitation period. We therefore reverse the judgment.

Reversed.

WEBBER and TRAPP, JJ., concur.