**KLINE IRON AND STEEL CO., INC., Plaintiff,**

v.

**GRAY COMMUNICATIONS CONSULTANTS, INC., Defendant.**

Civ. A. No. 3:88–560–16.

United States District Court, D. South Carolina, Columbia Division.

Feb. 10, 1989.

William F. Austin, Russell H. Putnam, Columbia, S.C., for plaintiff.

Elizabeth Carpentier, William C. Boyd, Columbia, S.C., for defendant.

### ORDER

HENDERSON, District Judge.

This matter is before the Court on the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Because the Court finds that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law, it grants the defendant's motion and orders that judgment be entered in the defendant's favor.

On a motion for summary judgment, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Viewed in the light most favorable to the plaintiff, the record reveals the following facts.

In early 1986, the defendant contacted various television tower builders, including the plaintiff, concerning manufacture and erection of a television tower near Huttig, Arkansas. The plaintiff and defendant subsequently conducted substantial negotiation by telephone, through correspondence and in person, culminating in a meeting of their representatives in Albany, Georgia, on June 20, 1986. According to the plaintiff, they reached an oral agreement during that meeting that the plaintiff was to provide the defendant's tower for a total price of $1,485,368.

On June 24, B.H. Kline, the plaintiff's chairman, wrote the defendant a letter which stated as follows:

> Thank you for the order for the subject project.
>
> Separately the contract is being mailed today by United Parcel Service.
>
> We look forward to full release on or about August 1, 1986.

Documents attached to Requests for Admission, Interrogatories and Requests for Production, filed October 11, 1988, ("Documents") at 84. On the same day, David E. Monts, sales manager for the plaintiff's tower division, sent the defendant a written "proposal" accompanied by the following letter:

> Attached are an original and two (2) carbon copies of our Proposal No. 620–M–86R covering the subject as agreed upon in your office last Friday, June 20, 1986. Please sign the original and one (1) copy on the lower left corner of page 9 and return to us for our execution. We will return one (1) executed copy for your file.
>
> Again we thank you for selecting us for this project. We assure you it is receiving our best attention. Our Engineering Department is proceeding with the designs, fabrication drawings, and material orders.
>
> We look forward to your receiving the necessary permits.

Documents at 85. The "proposal" consists of five pages of typewritten terms, setting forth specifications for the manufacture, assembly and erection of a television tower and related items and four pages of preprinted "Terms and Conditions of Sale." *See* Documents at 73–81.[1] The printed portion includes the following relevant terms:

---

1. The June 26 proposal is identical to two other proposals the plaintiff sent to the defendant on March 21 and April 7, 1986, except for certain specifications in the typewritten portion. *See* Documents at 90–99, 106–14. The April 7 proposal was accompanied by a letter which stated

Acceptance of Proposal

This proposal is for immediate acceptance and prior to such acceptance is subject to modification or withdrawal without notice.

Acceptance of this proposal will evidence Buyer's intent that the sale be governed solely by the terms and conditions of this proposal.

Any modifying, inconsistent or additional terms and conditions of Buyer's acceptance shall not become a part of any contract resulting from this proposal unless agreed to in writing by Kline.

Any order or offer by Buyer as a result of this proposal shall not be binding upon Kline until accepted by Kline in writing by an officer of Kline. If accepted by Kline, this proposal shall constitute the agreement between the Buyer and Kline.

Documents at 78. At the bottom of the final page appear the following signature spaces:

KLINE IRON & STEEL CO., INC.

By _____

Its _____ (Seller)

ACCEPTED

APPROVED

_____

KLINE IRON & STEEL CO., INC.

By _____

By _____

Its _____ (Buyer)

Its _____

DATE _____

DATE _____

Documents at 81. The first signature line is signed on the plaintiff's behalf by David E. Monts. No other signatures are affixed.

On June 30, Russ Abernathy, the defendant's then Director of Engineering, telephoned David Monts advising him that the defendant had received a lower quote from another tower company and asking that the plaintiff justify its higher price. Documents at 63; Deposition of David E. Monts, Exh. 10 at 17. In this and other calls between June 30 and July 14, 1986, the defendant's representatives indicated they felt there was no contract. Deposition of Bernard Herman Kline at 103. Finally, on July 14, Perley E. Eppley, Sr., the defendant's Vice President of Engineering, wrote the plaintiff a letter which stated in part:

As there is no contract or money has transferred and your competition is discussing the tower situation with our people, it has gotten into a very embarrassing situation as you have elected not to address this particular problem. If this continues much longer, a decision will have to be made and I feel it will not be favorable to Kline.

Documents at 62. In a subsequent letter dated August 7, 1988, Mr. Eppley informed the plaintiff: "At this time senior management has made a decision to go another direction and not go with your proposal." Documents at 56. Since that time, the plaintiff has continued to maintain that an agreement was reached at the June 20, 1986 meeting and the defendant has continued to deny the existence of any contract.

On March 4, 1988, the plaintiff commenced this action seeking damages of $297,072 for breach of the alleged oral contract. The defendant now moves for summary judgment on the following grounds: (1) enforcement of the alleged oral contract is barred by the statute of frauds; (2) the parties never entered into a contract; (3) the plaintiff has suffered no damages; (4) the plaintiff cannot recover consequential damages; and (5) the plaintiff cannot recover damages incurred before the alleged contract existed or after it knew the defendant contended no contract existed. Because the Court finds the action is barred by the statute of frauds, it grants the defendant's motion on that basis without reaching the alternative grounds.

The defendant asserts the alleged oral contract is unenforceable under section 36–2–201(1), the Uniform Commercial Code

in part: "Thank you for the contingent order for the subject project."

("UCC") statute of frauds, as codified by the South Carolina General Assembly. Section 36–2–201(1) provides:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

It is undisputed that no writing exists memorializing the alleged oral agreement and satisfying the requirements of section 36–2–201(1). The plaintiff asserts, however, that the agreement is not rendered unenforceable by this provision because (1) the contract is not for the sale of goods and therefore not subject to the writing requirement of section 36–2–201(1), (2) section 36–2–201(1) does not apply to a contract for the sale of goods which are not in existence and (3) the contract falls within the "merchant's exception" to the statute of frauds set forth in section 36–2–201(2). The Court addresses each of the plaintiff's arguments separately.

## I.

First, the plaintiff asserts that the alleged oral contract is not subject to the writing requirement in section 36–2–201(1) because it is a contract for services rather than for the sale of goods. The Court disagrees and finds the contract is one "for the sale of goods" within the purview of section 36–2–201.

The UCC definition of "goods" is very broad. *Computer Servicenters, Inc. v. Beacon Mfg. Co.*, 328 F.Supp. 653, 655 (D.S.C.1970), *aff'd*, 443 F.2d 906 (4th Cir. 1971). Section 36–2–105(1) provides:

> "*Goods*" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 36, Chapter 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 36–2–107).

Construing this language, the South Carolina Supreme Court has held that a contract for the sale of a mobile home was a transaction in goods because the mobile home was "moveable at the time of sale." *See Long v. Quality Mobile Home Brokers, Inc.*, 271 S.C. 482, 248 S.E.2d 311 (1978). This Court perceives no reason not to characterize the television tower and other items to be provided under the contract as goods under section 36–2–105(1) since they would be movable at the time of identification to the contract.[2] Neverthe-

---

**2.** The various products were to be manufactured or ordered in advance by the plaintiff and shipped to the tower site where they would be erected by subcontractors hired by the plaintiff. *See* Kline Deposition at 24–26, 42–43, 103; Monts Deposition at 18. Thus, they would clearly be movable at the time of identification to the contract. Neither the size of the tower nor the fact that it was to be affixed to realty prevents it from being characterized as "goods" under the UCC definition. *See Long v. Quality Mobile Home Brokers, Inc.*, 271 S.C. 482, 248 S.E.2d 311 (1978); *Corbin v. Coleco Indus., Inc.*, 748 F.2d 411 (7th Cir.1984) (above-ground swimming pool constitutes "goods"); *Pittsburgh–Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572 (7th Cir.1976) (million gallon water tank); *Entron, Inc. v. General Cablevision of Palatka*, 435 F.2d 995 (5th Cir.

1970) (cable television system); *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 400 F.Supp. 273 (E.D.Wis.1975) (structural assemblies for dam project); *Gulf Coast Fabricators, Inc. v. Mosley*, 439 So.2d 36 (Ala.1983) (prefabricated building); *Meeker v. Hamilton Grain Elevator Co.*, 110 Ill.App.3d 668, 66 Ill.Dec. 360, 442 N.E.2d 921 (1982) (grain bins); *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280 (Iowa 1979) (calf confinement buildings); *Stair v. Gaylord*, 232 Kan. 765, 659 P.2d 178 (1983) (irrigation system); *Usemco, Inc. v. Marbro Co.*, 60 Md.App. 351, 483 A.2d 88 (1984) (sewage treatment plant pumping stations); *Valley Farmers' Elevator v. Lindsay Bros. Corp.*, 398 N.W.2d 553 (Minn. 1987) (grain storage system); *Holstad v. Southwestern Porcelain, Inc.*, 421 N.W.2d 371 (Minn. App.1988) (grain silo); *Robertson Cos. v. Ken-*

less, the plaintiff asserts this particular contract is an agreement to provide services rather than to sell goods. In support of its argument, the plaintiff stresses the "importance of the specialized knowledge and skill required to design, fabricate and erect such a product" and relies on the affidavit of David E. Monts, attached to its supplemental memorandum, which purports to segregate and value the service components of the alleged contract. Monts's affidavit asserts that the contract price reflects the following charges for services to be performed:

| | | | |
|---|---|---|---|
| a. | Engineering, design, fabrication and inspection— | $ | 353,502.00 |
| b. | Erection services— | $ | 257,692.00 |
| c. | Overhead costs— | $ | 59,856.00 |
| d. | All risk insurance premium— | $ | 39,873.00 |
| e. | Cost for machined parts— | $ | 768.00 |
| f. | General liability insurance premium— | $ | 93,137.00 |
| | Total | $ | 804,828.00 |

The Court concludes that while the agreement alleged to exist here is a hybrid contract, calling for both delivery of goods and performance of services, it is nevertheless a "contract for the sale of goods" within the ambit of section 36–2–201(1).

In considering whether a hybrid contract is for the sale of goods under the UCC, courts generally employ the "predominant thrust" or "predominant factor" test. *See Ranger Constr. Co. v. Dixie Floor Co., Inc.*, 433 F.Supp. 442 (D.S.C.1977); Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services*, 5 A.L.R.4th 501, § 2 (1981). Under this test, particular transactions are "for the sale of goods" if "their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974) (footnotes omitted). The Court finds that the primary

*ner,* 311 N.W.2d 194 (N.D.1981) (grain storage

thrust of the alleged contract is for the sale of goods.

As a preliminary matter the Court notes that Monts's break-down of the service components in the alleged contract is unrealistic in several respects. First, engineering, design, fabrication and inspection should not be characterized as separate services. The price of virtually every product sold includes charges for such "services." *See id.* at 958–59 (" 'Services ... always play an important role in the use of goods, whether it is the service of transforming the raw materials into some usable product or the service of distributing the usable product to a point where it can easily be obtained by the consumer.' ") (quoting R. Nordstrom, *Handbook of the Law of Sales* 47 (1970)); *Valley Farmers' Elevator v. Lindsay Bros. Corp.*, 398 N.W. 2d 553, 556 (Minn.1987) ("Services are always required to convert raw material into a useful product."). The proposal makes no mention of these services nor does it quote a separate price for them. *See Bonebrake*, 499 F.2d at 959; *Aluminum Co. of Am. v. Electro Flo Corp.*, 451 F.2d 1115, 1118 (10th Cir.1971). In fact, Kline performed all the design work for the tower before ever quoting a price to the defendant. Kline Deposition at 29. For these reasons, the Court concludes the cost of these services should be characterized as part of the cost of the goods. The same reasoning applies to the charges for "machined parts" and "overhead" costs which should also properly be considered part of the price of the goods. Thus, the only "services" to be provided under the contract are erection of the tower and, assuming they relate to the erection, the listed insurance premiums, which services, according to Monts's affidavit, added $390,702 to the contract price. The Court holds these services are merely incidental to the sale of the tower and that the contract therefore is one for the sale of goods. The Court reaches this conclusion on the basis of the following uncontested facts.

First, the transaction by its very nature appears to be one for the sale of a tele-

building).

vision tower. The plaintiff itself admits that "[t]he contract between Plaintiff and Defendant was to furnish a tower for a fixed price." Plaintiff's Answer to Defendant's Requests for Admission, Interrogatories and Requests for Production, filed October 11, 1988, I.8, at 4.

Second, the terms and language of the proposal show that the alleged agreement is predominantly for the sale of goods. Throughout the proposal, the defendant is referred to as the "Buyer," a term indicative of a transaction for the sale of goods. *See Entron, Inc. v. General Cablevision of Palatka*, 435 F.2d 995, 1000 (5th Cir. 1970). The warranty language of the proposal is also peculiar to goods, not services. *See* Documents at 78–79; *Bonebrake*, 499 F.2d at 958. Further, more than two of the proposal's five typewritten pages are taken up with a detailed description of the tower and various accessories to be provided by the plaintiff and shipped "F.O.B. jobsite." By contrast, the erection services to be provided are listed in summary fashion in approximately one page. Finally, the proposal cites only the total contract price without allocating a particular amount to

services. *See id.* at 959; *Aluminum Co. of Am. v. Electro Flo Corp.*, 451 F.2d at 1118.

Third, Monts's affidavit supports the conclusion that the transaction is one for the sale of goods. According to Monts, the price of the assembly and erection services is at most $390,702 or approximately 26% of the total contract price. This price allocation is consistent with the proposal's requirement that 75% of the total price be paid "when tower materials are ready for shipment." Documents at 76. That so little of the total contract price is attributable to the services to be performed demonstrates that those services are merely incidental to the sale of the tower and accessory products. *See Valley Farmers' Elevator v. Lindsay Bros. Corp.*, 398 N.W.2d at 556.

In light of these facts, the Court concludes that the predominant thrust of the alleged agreement is to provide goods for the defendant and the contract is one for the sale of goods subject to the writing requirement of section 36–2–201.[3]

---

**3.** The Court's holding here is consistent with that of other courts which have found hybrid contracts to be predominantly for the sale of goods. *Cf. United States v. City of Twin Falls, Idaho*, 806 F.2d 862 (9th Cir.1986) (contract for construction and installation of city sludge disposal equipment), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174 (7th Cir.1986) (contract for engineering, design and installation of furnace); *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir.1979) (contract for sale and installation of computer system and training of employees); *Pittsburgh–Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572 (7th Cir.1976) (contract for design, manufacture and erection of million gallon water tower); *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974) (contract for sale and installation of bowling alley equipment); *Aluminum Co. of Am. v. Electro Flo Corp.*, 451 F.2d 1115 (10th Cir.1971) (contract for design and production of portable floor materials for amusement rides); *Entron, Inc. v. General Cablevision of Palatka*, 435 F.2d 995 (5th Cir.1970) (contract for construction, sale and installation of cable television system); *Gulf Coast Fabricators, Inc. v. Mosley*, 439 So.2d 36 (Ala.1983) (sale and installation of prefabricated building); *Lipson v. Hawthorne Indus., Inc.*, 148 Ga.App. 751, 252 S.E.2d 639 (1979)

(contract for manufacture of carpeting from raw materials provided by buyer); *Meeker v. Hamilton Grain Elevator Co.*, 110 Ill.App.3d 668, 66 Ill.Dec. 360, 442 N.E.2d 921 (1982) (contract for sale, assembly and installation of grain bins); *Stair v. Gaylord*, 232 Kan. 765, 659 P.2d 178 (1983) (sale and installation of irrigation system); *Riffe v. Black*, 548 S.W.2d 175 (Ky.App. 1977) (contract for sale and installation of swimming pool); *Burton v. Artery Co.*, 279 Md. 94, 367 A.2d 935 (1977) (contract for sale and installation of trees, shrubs and sod); *Valley Farmers' Elevator v. Lindsay Bros. Corp.*, 398 N.W.2d 553 (Minn.1987) (contract for sale of grain storage system); *Holstad v. Southwestern Porcelain, Inc.*, 421 N.W.2d 371 (Minn.App.1988) (contract for sale and installation of grain silo); *Anderson Constr. Co. v. Lyon Metal Prods., Inc.*, 370 So.2d 935 (Miss.1979) (contract for sale and installation of school lockers); *Norman Schuman Interiors, Inc. v. Sacks*, 479 S.W.2d 200 (Mo.App.1989) (contract for interior decoration and sale of furnishings); *Mennonite Deaconess Home & Hospital, Inc. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985) (contract for manufacture and installation of roofing system); *Meyers v. Henderson Constr. Co.*, 147 N.J. Super. 77, 370 A.2d 547 (Law Div.1977) (contract for sale and installation of overhead doors); *Huyler Paper Stock Co. v. Information Supplies Corp.*, 117 N.J.Super. 353, 284 A.2d 568

## II.

■ Next, the plaintiff asserts the alleged contract is not subject to the writing requirement of section 36–2–201 because under South Carolina law that statute does not apply to contracts for the sale of goods not yet in existence. The Court finds this argument unpersuasive.

Before enactment of the UCC, South Carolina's statute of frauds required all contracts for the sale of goods over $50 to be in writing and signed by the party against whom enforcement was sought. *See Noland Co. v. Grover Tank & Mfg. Co.,* 301 F.2d 43, 47 n. 5 (4th Cir.1962). In construing that statute, the South Carolina courts distinguished between goods *in solido* and goods *in futuro,* holding that the latter were not within the statute of frauds. *See, e.g., id.* at 48–49; *Wallace v. Dowling,* 86 S.C. 307, 68 S.E. 571 (1910); *Gadsden v. Lance,* 16 S.C.Eq. (McMul.) 87 (1841). This was a minority rule, however, which was superseded when the South Carolina General Assembly enacted the UCC. As noted above, the UCC statute of frauds expressly applies to any contract for the sale of goods for the price of $500 or more. Section 36–2–105(1) defines "goods" to include "specially manufactured goods" as long as they are movable at the time of identification to the contract and section 36–2–105(2) provides that "[a] purported present sale of future goods or of any interest therein operates as a contract to sell." In addition, section 36–2–106(1) states: " '*Contract for sale*' includes both a present sale of goods and a contract to sell goods at a future time." The express language of these provisions makes it clear that the former South Carolina rule, removing from the statute of frauds contracts for the sale of goods not yet in existence, is no longer in effect in this State.[4]

## III.

■ Next, the plaintiff asserts that, even if the contract is for the sale of goods and therefore subject to the requirements of section 36–2–201, the statute of frauds is satisfied under the "merchant's exception" in section 36–2–201(2). That section provides:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

The plaintiff contends that the proposal and the letters its agents sent to the defendant on June 24, 1986, constitute a confirmation of the oral contract which satisfies the requirements of this section. The defendant argues, however, that those documents do not bring the alleged oral agreement within the merchant's exception because (1) the defendant is not a "merchant," (2) the writings require the defendant to take further action to accept the proposal's terms, (3) the writings impose no binding obligations on the plaintiff and (4) written notice of objection was given within ten days. The Court agrees with the defendant that the alleged oral agreement does not come within the merchant's exception to the statute of frauds because the June 26 writings expressly require further

(Law Div.1971) (contract for collection and sale of paper waste); *Robertson Cos. v. Kenner,* 311 N.W.2d 194 (N.D.1981) (contract for sale and installation of grain storage building); *Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 437 A.2d 417 (1981) (contract for sale and installation of burglar alarm system).

**4.** To support its contention that enactment of the UCC did not affect the former South Carolina rule, the plaintiff cites the statement in the South Carolina Reporter's Comments that that rule "may be modified by Commercial Code Section 2–201(1)." The plaintiff reasons that because the reporter did not affirmatively state that the rule had been changed, by implication it remains in force. Aside from the questionable logic of the plaintiff's construction, the remainder of the paragraph from which the plaintiff quotes undermines its argument. The reporter went on to cite sections 2–105 and 2–106 and concluded that the definitions of "goods" and "contract for sale" in those sections "should be determinative of the scope of coverage of [section 36–2–201] under the Code which would seem to include a contract for the sale of future goods requiring work or labor to be bestowed upon them by the vendor."

action by the defendant and because they are not binding against the plaintiff.[5]

Although Monts's letter of June 26, 1986, states that the terms of the proposal are "as agreed upon" at the June 20, 1986, meeting, both letters, and especially the proposal, expressly require that the plaintiff take further action for the agreement to be consummated. B.H. Kline's letter thanks the defendant for its "order" and advises that a written contract is being sent separately. Monts's letter directs the defendant to sign and return one copy of the proposal for the plaintiff's "execution." The proposal itself provides that it is for the defendant's "immediate acceptance" and that its terms can be modified or withdrawn without notice prior to such acceptance. In order to be a "confirmation" under section 36–2–201(2), a writing must "at least 'indicate that a binding or completed transaction has been made.'" *Trilco Terminal v. Prebilt Corp.*, 167 N.J.Super. 449, 454, 400 A.2d 1237, 1240 (Law Div.1979) (quoting 1 R. Anderson, *Uniform Commercial Code* § 2:201:51 (2d ed. 1970)), *aff'd*, 174 N.J.Super. 24, 415 A.2d 356 (App. Div.1980); *see also R.S. Bennett & Co. v. Economy Indus., Inc.*, 606 F.2d 182, 185–86 (7th Cir.1979); *Rockland Indus., Inc. v. Frank Kasmir Assocs.*, 470 F.Supp. 1176, 1178 (N.D.Tex.1979); *Doral Hosiery Corp. v. Sav–A–Stop, Inc.*, 377 F.Supp. 387, 389 (E.D.Pa.1974). For this reason, a writing which requires that the recipient sign and return a copy to the sender is not a "confirmation" under section 36–2–102. *See The Great Western Sugar Co. v. Lone Star Donut Co.*, 567 F.Supp. 340, 342 (N.D.Tex. 1983), *aff'd*, 721 F.2d 510 (5th Cir.1983); *Adams v. Petrade Int'l*, 754 S.W.2d 696 (Tex.Civ.App.1988). As one court explained:

> By requiring the buyer to take further action in order to signal acceptance (signing and returning a copy of the letter agreement), [the seller] indicated to the buyer ... that the terms quoted were still subject to acceptance or rejection rather than representing a memorialization of an oral contract. A true confirmation requires no response.

*Great Western*, 567 F.Supp. at 342. The Court concludes that because the June 26 writings expressly require that the defendant sign and return the proposal to indicate acceptance of its terms, those writings are at most an offer to be accepted or rejected by the defendant[6] and are not a confirmation of an earlier oral agreement.

The Court also finds the June 26 writings fail to come within the merchant's exception because they do not bind the plaintiff to the terms of the proposal and therefore are not "sufficient against the sender," as expressly required by section 36–2–201(2). Under the terms of the proposal, the plaintiff reserves the right to modify or withdraw the proposal without notice at any time before the defendant's acceptance. Thus, the writing is not sufficient even against the plaintiff whose agent's signature is affixed.[7] To permit the plaintiff here to claim benefit of section 36–2–201(2) would frustrate the purpose behind the merchant's exception to the statute of frauds. Under pre-Code law, the party who signed a written confirmation of an oral agreement was bound by the terms of that writing and could not assert the stat-

---

**5.** In light of this holding, the Court need not address the defendant's other two grounds for finding the merchant's exception inapplicable here. Nevertheless, the Court notes that these grounds appear insufficient for the following reasons. First, section 36–2–104(1) defines "merchant" broadly enough to include a corporation such as the defendant, at least as the term is used in section 36–2–201(2) ]. *See* Section 36–2–104 comment 2 ("For purposes of [section 36–2–201(2)] almost every person in business would ... be deemed to be a 'merchant' ... since the practices involved in the transaction are non-specialized business practices such as answering mail."). Second, the defendant's tele-phone call to the plaintiff on June 30, 1986, even though memorialized by the plaintiff, cannot reasonably be characterized as a "written notice."

**6.** The writings may not even constitute an offer as the proposal suggests that no contract will arise until one of the plaintiff's agents signs the proposal as "approved." *See* Documents at 78, 81 (quoted *supra* pages 136–37).

**7.** In addition, the terms of the proposal suggest that the plaintiff would not be bound even upon acceptance by the defendant. *See supra* note 6.

ute of frauds as a defense, while the party receiving the confirmation could elect either to enforce the agreement or to invoke the statute of frauds to prevent its enforcement, whichever proved more advantageous. The drafters of the UCC attempted to cure this inequity through the merchant's exception which makes the confirmation enforceable against both parties even though signed only by the sender. *See R.S. Bennett & Co. v. Economy Indus., Inc.*, 606 F.2d 182, 185–86 (7th Cir. 1979); *Perdue Farms, Inc. v. Motts, Inc. of Miss.*, 459 F.Supp. 7, 13–14 (N.D.Miss. 1978); *Tiffany v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 418, 493 P.2d 1220, 1223 (1972) (quoting Staff, *An Introduction to the Uniform Commercial Code*, 9 Ariz.L.Rev. 216, 221 (1967)); J. White & R. Summers, *Uniform Commercial Code* § 2–3, at 47–48 (1972). If the Court were to hold that the proposal here satisfies the merchant's exception, the defendant would be bound to its terms but the plaintiff, who has expressly reserved the right to withdraw or modify the proposal, would be free to enforce the agreement or not as it chose. Such a result would simply reverse the situation existing before the UCC and would be equally unfair.

For these reasons, the Court concludes the writings the plaintiff offers are insufficient to satisfy the UCC statute of frauds under the merchant's exception contained in section 36–2–201(2).

## CONCLUSION

Because the oral agreement alleged by the plaintiff is a contract for the sale of goods and because no writing exists sufficient to satisfy the UCC statute of frauds, the Court holds that as a matter of law there is no enforceable contract between the parties and directs that summary judgment be entered in the defendant's favor.

IT IS SO ORDERED.