**NIM PLASTICS CORPORATION,**
Plaintiff,

v.

**STANDEX INTERNATIONAL CORPORATION,**
Defendant.

No. 97 C 7734.

United States District Court,
N.D. Illinois,
Eastern Division.

July 22, 1998.

Elizabeth Jean Caprini, Law Offices of Elizabeth J. Caprini, Hinsdale, IL, for Plaintiff.

Richard Thomas Sikes, Jr., Michael J. Kelly, Freeborn & Peters, Chicago, IL, Richard Anthony Fiore, Freeborn & Peters, Chicago, IL, for Defendant Standex Intern. Corp.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff has brought this action against Defendant for breach of contract and breach of implied warranty. Pending is Defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the breach of implied warranty claim. For the reasons set forth below, this motion is granted.

## FACTUAL BACKGROUND[1]

Plaintiff NIM Plastics Corporation ("NIM") is in the business of extruding polycarbonate resin into sheets and film which it then markets and sells to its customers. (Cmplt.¶ 1.) Mold–Tech, a division of the Defendant corporation, is in the business of applying textured and chemically "etched" finishes on rolls to be used by customers to produce or manufacture sheets of film. (Id. ¶¶ 4, 9.)

In or about 1992, NIM had one of its existing rolls refinished with a textured matte finish (hereinafter referred to as the "Roll"). (Cmplt.¶ 9.) In or about May of 1997, NIM and Mold–Tech entered into an oral contract. Under the agreement, Mold–Tech agreed (a) to "refinish" NIM's existing Roll with a matte finish replicating the matte finish then on the Roll, (b) to chemically "etch" the matte finish onto the existing Roll, and (c) to complete the work on the Roll and return it to NIM in approximately three weeks. (Id. ¶ 10.) Mold–Tech had the Roll sandblasted and resurfaced and then returned it to NIM on or about June 9, 1997. (Id. ¶ 13.) The surface applied to the Roll did not replicate the matte finish which was on the Roll when the Roll was received by Mold–Tech. (Id. ¶ 14.)

NIM rejected the resurfaced Roll as nonconforming and seasonably notified Mold–Tech of its rejection of the Roll. (Cmplt.¶ 15.) NIM returned the Roll to Mold–Tech twice for the purpose of Mold–Tech repairing and appropriately equating the finish on the Roll. (Id. ¶¶ 17, 18.) Mold–Tech and its agent, Keystone Rolls, Inc., however, were unable to repair the Roll so that it complied with Mold–Tech's agreement with NIM. (Id.)

Since Mold–Tech failed to repair or replace the Roll so that it complied with the contract, NIM shipped the Roll to New Castle, a competitor of Mold–Tech, which resurfaced the Roll with a matte finish replicating the original matte finish on NIM's Roll. (Cmplt.¶¶ 19, 22.)

On November 3, 1997, NIM filed a two-count complaint against Standex. NIM sues Standex for breach of contract (Count I) and breach of implied warranty (Count II). Standex now moves to dismiss the breach of implied warranty count for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

## STANDARDS FOR MOTION TO DISMISS

On a motion to dismiss, the court takes all of the well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. See, e.g., Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 401 (7th Cir.1996). A complaint will not be dismissed on a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

1. The court has taken these facts from the well-pleaded allegations contained in Plaintiff's Complaint which, for purposes of Defendant's motion to dismiss, are deemed true. See, e.g., Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir. 1996).

support of the claim that would entitle him or her to relief. *Id.*

## ANALYSIS

As stated, in Count II of Plaintiff's Complaint, NIM makes a claim for breach of implied warranty as to merchantability and fitness for a particular purpose. (*See* Cmplt. ¶ 29.) The parties concur that Plaintiff's implied warranty claim here is a creation of the Uniform Commercial Code (the "U.C.C.").[2] (Def.Mem. at 1–2; Pl.Resp. at 2–3.) *See also American Labelmark Co. v. Akiyama Corp. of Am.*, No. 93 C 3208, 1993 WL 460838, at * 1–2 (N.D.Ill. Nov.5, 1993). The parties further agree that the U.C.C. applies only to "transactions in goods." 810 ILCS 5/2–102.

■ The issue here, then, is discrete: whether NIM states a cause of action that Mold–Tech provided NIM with a "good" within the meaning of the U.C.C. (*See* Pl. Resp. at 2–3; Def. Reply at 1–2.)

■ The Illinois U.C.C. defines goods as "all things . . . which are movable at the time of identification to the contract for sale[.]" 810 ILCS 5/2–105(1). "The definition of goods is based on the concept of moveability[.] It is not intended to deal with things which are not fairly identifiable as moveables before the contract is performed." 810 ILCS 5/2–105 cmt. 1.[3] Additionally, the U.C.C. defines a "sale" as "the passing of title from the seller to the buyer for a price." 810 ILCS 5/2–106(1).

■ Where a sale of goods additionally requires the seller to perform services, Illinois law classifies the agreement as "mixed" and requires courts to apply a "predominant purpose" test to determine whether the U.C.C. governs the contract. *See Center Ice*, 1997 WL 43230, at *3. The central query of the test is whether the purpose of the agreement "is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of

a water heater in a bathroom)." *Id.* (quoting *Meeker v. Hamilton Grain Elevator Co.*, 110 Ill.App.3d 668, 670, 66 Ill.Dec. 360, 442 N.E.2d 921, 922 (4th Dist.1982)). If the contract's "primary purpose" is the sale of goods, then the entire contract falls within the ambit of the U.C.C. *Id.*

NIM asserts that its allegations sufficiently plead that Mold–Tech provided NIM with a "good" within the meaning of the U.C.C. Plaintiff argues that the new matte surface for its Roll that it contracted for from Mold–Tech was such a "good." Plaintiff additionally argues that, even if Mold–Tech agreed to provide services in connection with the application of the surface, the predominant purpose of the agreement was a good, namely NIM's purchase of the new surface.

Upon reviewing the allegations in Plaintiff's Complaint and the legal authorities relied upon by the parties, this court finds that the parties' contract for Mold–Tech to provide a new matte surface for NIM's Roll was a service contract, not a sale of "goods" as defined by the U.C.C. The agreement between NIM and Mold–Tech called for Mold–Tech to "refinish" and "etch" NIM's existing Roll. (*See* Cmplt. ¶ 10.) Mold–Tech's refinishing and etching work on NIM's Roll, which merely was to result in a "new surface" on an existing roll, cannot be considered "moveable" as required under the U.C.C.'s definition of goods. Further, Mold–Tech's work on, and eventual refinishing of, the surface of the Roll—which roll NIM owned throughout the transaction at issue here—does not constitute a "sale," with a "passing of title," as defined by the U.C.C. In short, the "new surface" is not an identifiable "moveable" "thing" as contemplated by the U.C.C. definition of a "good," and the "new surface" was not sold in the sense that "title" to it could be passed.

Nor, in any event, does this court find that the "predominant purpose" of the agreement was NIM's purchase of a good. Instead, it is

---

**2.** The parties agree that Illinois law applies to this action which is in federal court based on diversity jurisdiction.

**3.** "[T]he term 'goods' is not to be given a narrow construction but instead should be viewed as being broad in scope so as to carry out the

underlying purpose of the Code of achieving uniformity in commercial transactions." *Pittsburgh–Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572, 580 (7th Cir.1976). *See also Center Ice of Dupage, Inc. v. Burley's Rink Supply, Inc.*, NO. 96 C 5537, 1997 WL 43230, at *2 (N.D.Ill. Jan.24, 1997).

this court's determination that the primary purpose of the agreement for Mold–Tech to perform refinishing work on NIM's existing Roll—like other types of work performed on another's existing property, *e.g.*, sanding someone's table, waxing someone's floor and painting someone's chair—was the performance of a service.

The cases cited by NIM in its brief are distinguishable. In *Gross Valentino Printing Co. v. Clarke*, 120 Ill.App.3d 907, 910–11, 76 Ill.Dec. 373, 458 N.E.2d 1027, 1030 (1st Dist.1983), the court found that the predominant purpose of a contract between a magazine publisher and printing company was the sale of goods—the tangible production and delivery of magazines—even though the contract required the physical printing of the magazines. In *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 181–82 (7th Cir.1986), the court found that the predominant purpose of a contract was the sale of goods, *i.e.*, the sale of furnaces, even though the contract additionally called for the design, assembly and installation of the furnaces. In *Analysts Int'l Corp. v. Recycled Paper Prods., Inc.*, No. 85 C 8637, 1987 WL 12917, at *3–4 (N.D.Ill. June 19, 1987), the court found that the predominant purpose of a contract was the sale of goods—a computerized reordering system—even though the contract also involved work to produce the subject computer program.

Put simply, unlike here, the common thread in each of the above cases cited by Plaintiff was the presence of an identifiable "moveable" item(s) (magazines, furnaces, software) to which title would pass. Here, in contrast, Plaintiff's contract for a refinished *surface* on Plaintiff's existing Roll—unlike magazines, furnaces, and computer soft-

ware—cannot be considered such a moveable item to which title would pass. This court finds that, unlike the cited cases discussed above, the contract at issue here predominately involved the rendition of service, with goods incidentally involved.[4]

## CONCLUSION

Accordingly, Defendant Standex International's motion to dismiss Plaintiff NIM Plastics Corporation's breach of implied warranty claim (Count II of the Complaint), pursuant to Fed.R.Civ.P. 12(b)(6), is granted with prejudice.[5]

---

4. Plaintiff unsuccessfully attempts to distinguish *Meyer v. ERJ, Inc.*, No. 96 C 0143, 1997 WL 158354 (N.D.Ill. March 31, 1997), wherein the court found that some transactions between the parties were service related. In *Meyer*, the first party supplied raw cloth material to the second party which the second party was to "process" and return as finished product (*e.g.*, bedspreads, sheet sets, etc.). The *Meyer* court stated that "[a]lthough [the second party] periodically produced materials in connection with these services, the predominant thrust of these transactions was to provide services, not to supply goods[.]" *Id.* at *4. Contrary to Plaintiff's assertions, this case directly supports Defendant's po-

sition here. Here, as in *Meyer*, NIM provided raw material to Mold–Tech for Mold–Tech to "process." As in *Meyer*, the essence of the contract was service, not the sale of a good. Indeed, this case is even more like a service contract than was *Meyer* because the end result of the contract in this case was immovable (the surface finish of the Roll), as opposed to the tangible products produced in *Meyer* (bedspreads).

5. The parties indicated in open court that the motion to dismiss Count II involved a substantive rather than an amendable issue. The court finds upon review that Count II is unamendable.