In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3282

REMAPP INTERNATIONAL CORPORATION,

*Plaintiff-Appellee,*

*v.*

COMFORT KEYBOARD COMPANY, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 C 287—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED FEBRUARY 19, 2009—DECIDED MARCH 24, 2009

Before FLAUM and WILLIAMS, *Circuit Judges*, and
KAPALA, *District Judge.*[1]

KAPALA, *District Court Judge*. In this diversity action,
plaintiff, ReMapp International Corporation, filed a

[1] The Honorable Frederick J. Kapala of the United States
District Court for the Northern District of Illinois, sitting by
designation.

complaint alleging that defendant, Comfort Keyboard Company, Inc., breached the parties' contract for the sale of goods by failing to pay for the items it ordered from plaintiff. Following a bench trial, the magistrate judge entered judgment in favor of plaintiff on its breach of contract claim in the amount of $67,560. Defendant now appeals.

## I. Background

At trial, Hal Edmonds, the president of plaintiff, testified that plaintiff provides contract manufacturing services of electronic materials, including printed circuit boards. Edmonds testified that plaintiff had done business with defendant for about six or seven years. When plaintiff and defendant started doing business, defendant would submit a written purchase order for goods. However, within a very short time, defendant would just call plaintiff and say what parts it needed. Edmonds testified that since 2004, the payment terms for all board assemblies were 50% "ARO" (after receipt of the pro forma order) and 50% thirty days after receipt of the shipment.

Edmonds recalled that in April 2006 defendant ordered 1,000 USB boards, and in May 2006, defendant placed an order for 1,000 HUB boards.[2] In July 2006, both orders were

---

[2] The parties and the magistrate judge referred to the boards as both keyboards and circuit boards. It is unclear from the record what the proper term is or how the two types differ.

(continued...)

increased to 2,000. According to Edmonds, the defendant's president, Khalil "Charles" Afifi verbally placed each order directly with Edmonds, as was the practice for some years. In addition to the boards, Afifi verbally asked plaintiff to buy microprocessors for all the boards if plaintiff could buy the microprocessors for less than six dollars. Plaintiff was able to find microprocessors for $5.85. Plaintiff then called Afifi and obtained Afifi's verbal authorization to purchase 4,100 microprocessors at the $5.85 price.

According to Edmonds, after Afifi placed the orders for the boards, plaintiff provided defendant with a pro forma invoice, which was essentially "what the final invoice would look like when the product is finished and delivered." This would assure that defendant knew exactly what it would be paying when the bill was due. The pro forma invoice contains conditions and includes the freight, "it documents what's transpired, and has built into it a request for the payment conditions." Edmonds explained that a pro forma invoice is not a quotation, but "a follow-up to an agreement to an acceptance." As to the microprocessors, plaintiff issued a standard invoice dated July 19, 2006, which stated "100% Payment at time of purchase."

Edmonds recounted that from April through August 2006 the parties had continuing dialog on

---

[2] (...continued)
Because these details are not critical to our analysis, in this opinion, they are simply referred to as boards.

various aspects of the orders. At no time did defendant tell Edmonds not to proceed with the orders. According to Edmonds, he and Afifi had discussed the invoices for the boards numerous times, and Afifi encouraged plaintiff to keep going and make whatever changes were necessary. On May 2, 2006, Edmonds sent an e-mail to Afifi stating that plaintiff was finishing "the USB" and the "HUB can move quickly, as well." On May 19, 2006, Edmonds sent Afifi an e-mail stating that he found a program in a sample board that was used to program a component of the USB board and stated that he had attached the pro forma invoice for the USB boards. Afifi replied, "YOU ARE THE BEST. . . . . . GREAT NEWS . . . 'THANK YOU.' " Edmonds explained that on August 17, 2006, he sent Afifi an e-mail asking if Afifi wanted one USB connector on 1,000 HUB boards, and two USB connectors on the other 1,000 HUB boards. Later that day, Afifi responded with an e-mail stating, "1500 with two and 500 with one." On August 18, 2006, Edmonds sent Afifi an e-mail about a design change defendant had requested. In that e-mail Edmonds states, in part, "[F]or the 1000 boards already made the engineer says he can put an SMT pad on the backside using the existing pads. Will that work for you?" Later that day, Afifi replied, "GREAT. . . . PLEASE HAVE THEM DO THAT. . ."

On July 28, 2006, Edmonds sent Afifi an e-mail requesting payment for the invoices for the USB and HUB boards. Edmonds explained that plaintiff deviated slightly from its normal procedure by ordering the products prior to pre-payment. On cross-examination, Edmonds admitted that in his history of working with defendant,

this was the first time that defendant had not paid at least 50% before plaintiff placed an order with the supplier.

Edmonds sent Afifi several more e-mails in August and September requesting payment. Edmonds estimated that between May and October 2006, he had approximately twenty conversations with Afifi in which Afifi promised that the payments were forthcoming. On September 26, 2006, Afifi sent an e-mail to Edmonds stating that his investors wanted to use a different supplier. Edmonds responded with an e-mail requesting that Afifi pay the balance of his account.

Edmonds further testified that on October 6, 2006, plaintiff issued an invoice to defendant for the parts that had been manufactured. Edmonds testified that both the USB and HUB boards had been manufactured, but the microprocessors had not yet been put on the boards when production was stopped. According to Edmonds, the printed boards are unique for each customer because they are designed for each customer's particular need. If the customer did not take what they ordered, the boards would be scrapped. The microprocessors, on the other hand, were purchased, but could be sold and used else-where. At the time of the trial, the boards and the micro-processors remained in China undelivered because de-fendant had not paid plaintiff.

Afifi testified that the parties first started doing business around 2001-2002. Afifi described the parties' purchasing practice up until May 2006 as follows. Purchases would begin by Edmonds calling Afifi and asking if Afifi needed anything. Afifi would then ask for a price and

Edmonds would issue a pro forma invoice, which was "technically like a quote." Sometimes they would go back and forth, and Edmonds would send multiple pro forma invoices with adjustments. If the price was acceptable to Afifi, he would send Edmonds 50% of the payment for the order. Once the job was done, Edmonds would call Afifi to inform him that the boards were ready to ship, and the other 50% was required. Afifi identified several previous pro forma invoices where he paid 50% at the time he placed the order and 50% at the time the order was ready to be shipped. According to Afifi, the 50% payment was an approval by defendant to proceed with the job.

Afifi further testified that he never authorized invoices for the USB boards, HUB boards or the microprocessors. Specifically, Afifi testified that he never asked Edmonds to see how much it would be to increase the original board orders to 2,000 boards. As to the microprocessors, Afifi testified that he never authorized the purchase of the microprocessors because he could get them in the United States for a cheaper price. Afifi also claimed he never paid 50% down on any of the orders as he had done in the past, and denied having any conversation with Edmonds that plaintiff would order any of the items on credit. Afifi denied receiving several of Edmonds' e-mails seeking payment and averred that many of the e-mails that Edmonds claimed were from Afifi were fraudulent.

The magistrate judge entered judgment in favor of plaintiff on plaintiff's breach of contract claim concluding that three oral contracts existed between plaintiff and

defendant. The first was for defendant to purchase 2,000 USB boards at a price of $21.65 each for a total cost of $43,300. The second was for defendant to purchase 2,000 HUB boards at a price of $23.60 each for a total cost of $47,200. The third was for defendant to purchase 4,100 microprocessors at a price of $5.85 each for a total of $23,985.

The magistrate judge noted that because the sale of goods in each contract was in excess of $500, Wisconsin's codification of the Uniform Commercial Code's Statute of Frauds required the contract to be in writing. Wis. Stat. § 402.201. However, the magistrate judge concluded that the parties' oral contracts fell within exceptions to the Statute of Frauds. First, he found that the evidence established that the USB and HUB boards were custom manufactured for defendant and were not suitable for resale to others. As such, he held that the first two contracts were enforceable under Wisconsin Statute § 402.201(3)(a), which provides an exception to the Statute of Frauds for specially manufactured goods. Second, the magistrate judge found that defendant failed to object to plaintiff's July 19, 2006 invoice for the 4,100 processors within ten days after receipt of the invoice. Accordingly, he held that this third contract was enforceable under Wisconsin Statute § 402.201(2), which provides an exception to the Statute of Frauds where a merchant sends another merchant a written confirmation of the parties' contract, and no written objection is made within ten days of receipt.

The magistrate judge awarded damages to plaintiff for the USB and HUB board contracts, but not for the micro-

processor contract. The magistrate judge held that plaintiff was not entitled to damages for defendant's breach of the microprocessor contract because plaintiff failed to show that it mitigated its damages by attempting to resell the microprocessors which could be resold at the full price. As to damages for the USB and HUB boards, the magistrate judge found these could not be resold, deducted freight charges and additional unproven charges as well as the $.10 per pound that plaintiff could obtain as scrap for the boards, and awarded plaintiff a total of $67,560.00 in damages.

## II. Discussion

On appeal, defendant argues that the magistrate judge erred in his findings of fact by concluding that oral contracts existed, that those oral contracts were outside of the Statute of Frauds and that plaintiff was entitled to damages. Defendant also argues that plaintiff assumed the risk of ordering all of these electronic components by proceeding without any assurance defendant would accept the product.

We review the trial court's findings of fact and its application of facts to the law for clear error. *Cohen Dev. Co. v. JMJ Props., Inc.*, 317 F.3d 729, 735 (7th Cir. 2003). The existence of a contract is a mixed question of law and fact subject to clear error review. *E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 917 (7th Cir. 2007); *see also Cohen*, 317 F.3d at 737-38 (applying clearly erroneous standard to review the trial court's application of the facts to Statute of Frauds exceptions). "A finding is clearly erroneous

only when this court is left with a definite and firm conviction that a mistake has been committed." *Cohen*, 317 F.3d at 735 (quotation marks omitted). The party alleging error bears the burden of demonstrating that particular factual findings are clearly erroneous. *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847 (7th Cir. 2005).

### A. Formation of a Contract

Defendant's first argument is that the magistrate judge erred in his finding of facts by holding that the parties had three oral contracts. Defendant contends that the facts do not demonstrate any acceptance of the contracts by defendant. Specifically, defendant asserts that the testimony regarding the parties' course of dealing shows that plaintiff's pro forma invoice was a written offer, that acceptance of the offer required 50% pre-payment, and that defendant never accepted the offer because it never paid the 50% pre-payment.

However, this court cannot find that the magistrate judge clearly erred in finding that the pro forma invoice was a written confirmation of the parties' earlier oral agreement rather than a written offer requiring payment for acceptance. Under Wisconsin law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Wis. Stat. § 402.204(1). In this case, Edmonds testified that Afifi called him and placed orders for the USB boards and the HUB boards, after which Edmonds created a pro forma invoice. Edmonds explained that in place of the purchase

orders defendant submitted to plaintiff at the beginning of the parties' relationship, plaintiff had created a pro forma invoice after defendant placed an order to assure defendant knew exactly what the final invoice would look like. Edmonds further testified that the pro forma invoice was not a quotation, but occurred after the acceptance of the agreement.

Moreover, both parties' conduct indicated they had formed a contract. In response to Edmonds' e-mail sending the pro forma invoice for the USB boards, Afifi replied affirmatively. Later in the summer, Afifi sent e-mails to Edmonds responding to a question about how he wanted the HUB boards constructed. In addition, Edmonds' e-mails to Afifi frequently indicated that the boards were either made or being made, and the record shows no response by Afifi informing Edmonds that he did not think the parties had a contract.

Although defendant argues that Afifi should be believed when he testified that the pro forma invoice was a "quote", the trial court is entitled to significant deference as to its credibility determinations. *E.C. Styberg*, 492 F.3d at 917. Afifi's testimony that he believed he had not accepted Edmonds' offer was contradictory to the e-mails he sent to Edmonds and his overall silence in response to clear indications that plaintiff was producing his order.

Defendant has not developed a separate argument as to the microprocessors, but the magistrate judge's finding that the parties entered a third contract for 4,100 microprocessors is also supported by the record. Edmonds

testified that Afifi verbally asked him to buy the micro-processors for the boards if he could find them for under $6.00. He further testified that when he found the micro-processors for $5.85 he obtained Afifi's verbal authoriza-tion to purchase them. Because Edmonds needed to contract for the microprocessors quickly to maintain the price, he entered the contract and issued Afifi an invoice for 100% of the payment. Neither party testified as to a pro forma invoice for the microprocessors. Thus, it is unclear if defendant is contending the invoice was plain-tiff's offer which required 100% payment for acceptance. In any event, although Afifi denied placing any oral order, again, the magistrate judge credited Edmonds' testimony. This testimony supports the magistrate judge's con-clusion that the parties had an oral agreement for the microprocessors.[3]

Defendant is correct that the evidence reflects that up until these orders plaintiff always required a 50% down payment prior to commencing manufacture of the prod-ucts. However, this fact does not necessarily indicate that the parties did not have a contract. According to Edmonds, when defendant placed an order and plaintiff orally accepted, plaintiff then created a pro forma invoice outlining the terms of the parties' agreement. One of the terms of the agreement was 50% payment upon receipt of

---

[3] In addition, for reasons further discussed below, defendant's arguments regarding the microprocessors are moot, as the magistrate judge denied plaintiff any damages for defendant's breach of the parties' oral contract for the microprocessors.

the invoice. Simply because the payment terms of a contract go unfilled does not mean there is no contract. Here, the magistrate judge's finding that there was an oral offer and acceptance is not clearly erroneous.[4]

### B. Statute of Frauds Exceptions

Defendant next argues that the magistrate judge erred in finding that the three oral contacts were enforceable because exceptions to the Statute of Frauds applied. Again, defendant does not separate its arguments regarding the boards and the microprocessors, but this court will address these components separately, as the magistrate judge applied a different Statute of Frauds exception to each.

---

[4] The defendant cites this Court's decision in *Dresser Industries, Inc., Waukesha Engine Division v. Gradall Co.*, 965 F.2d 1442, 1449 (7th Cir. 1992), for the proposition that, where a party sends a written offer that makes acceptance of the agreement subject to its terms and those terms are not met or are rejected, no enforceable contract results. However, defendant leaves out the additional finding in *Dresser* which states that, "If, without the offeror's acceptance of the offeree's terms, the parties nevertheless act as if a contract has been formed, the terms of their agreement are determined by § 2-207(3) of the U.C.C., as set forth in Wisconsin Statute § 402.207(3)." *Id.* In this case, the parties acted as if a contract was formed, and defendant's acceptance of the agreement was evidenced by its instructions to plaintiff regarding production of the parts, and its failure to object to plaintiff's conduct and statements indicating that it was performing on the parties' contract.

### 1. Boards—Specially Manufactured Goods

The magistrate judge held that the parties' oral contracts for the USB and HUB boards were not subject to the Statute of Frauds because the boards were specially manufactured goods. Wisconsin Statute § 402.201(3)(a) states,

> (3) A contract which does not satisfy the requirements of sub. (1) but which is valid in other respects is enforceable:
>
> > (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement . . . .

Wis. Stat. § 402.201(3)(a).

Defendant argues that the magistrate judge erred in applying § 402.201(3)(a) because the record does not show either that the goods were actually manufactured or that the boards were specially designed. Both of these arguments fail.

As to defendant's first argument, the record reflects that Edmonds testified multiple times that the goods were manufactured. For example, plaintiff's counsel directly asked Edmonds, "And were the items manufactured?" to which Edmonds responded, "Yes." Later,

Edmonds and his counsel had the following exchange regarding defendant's order for 1,000 USB boards:

Q.  Did you complete the manufacturing process?

A.  We completed the manufacture of those boards.

Q.  And are those items in existence today?

A.  They are in existence.

Q.  And has ReMapp paid for the component parts?

A.  We have.

Edmonds also testified that, in total, plaintiff had manufactured 2,000 USB boards and 2,000 HUB boards. Finally, the court asked Edmonds directly whether the manufacturing was completed on the goods, and Edmonds explained that "the boards are fabricated but the components aren't on the boards."

As to whether the goods were specially made, Edmonds testified that the boards were manufactured to fit defendant's specific design. He further testified that they could not have been used by any other company. Moreover, Edmonds testified that the boards had defendant's proprietary design and plaintiff would have no reason to give them to anyone without permission. The evidence cited by defendant on appeal does not refute this evidence. Afifi testified that he had problems with some of the previous boards he received. As a result, he had to desolder a wire, clean the holes and solder a resistor onto the board. However, nothing about Afifi's testimony identifies the wire as the uniquely manufactured part of the board, or that the replacement of the wire would

change the nature of the board, such that it would not have been defendant's specific design.

Accordingly, this court rejects defendant's argument that the district court erred in finding that the boards were specially manufactured goods.

### 2. The Microprocessors—Written Notice

The district court also held that the parties' contract for microprocessors was enforceable despite the absence of a writing. Wisconsin Statute § 402.201(2) states:

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of sub. (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

Wis. Stat. § 402.201(2). Defendant argues that the district court erred in applying this section because the document at issue was not a confirmation of the order, but rather was an offer requiring a response.

Initially, it is important to note that defendant's argument is moot. The district court ultimately did not award plaintiff any relief for defendant's breach of the microprocessor contract. Thus, even if this court were to reverse the district court on these grounds, there is no other relief defendant could obtain on this issue. *See Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154

(7th Cir. 1995) ("Litigants who take offense at statements in an opinion, or who believe that the judge committed a legal error, but who cannot show how the judgment injured them in a way the court of appeals can correct, are not proper appellants.").

However, even if we assumed defendant's argument is not moot, it would be rejected. Defendant cites *Kline Iron and Steel Co. Inc. v. Gary Communications Consultants, Inc.*, 715 F. Supp. 135 (D.S.C. 1989), to support its argument that the invoice at issue is not a writing in confirmation of the contract. In that case, the plaintiff sent the defendant a document entitled "Proposal" which stated in part that "This proposal is for immediate acceptance and prior to such acceptance is subject to modification or withdrawal without notice," and that, "Acceptance of this proposal will evidence Buyer's intent that the sale be governed solely by the terms and conditions of this proposal." *Id.* at 136-37. Six days after receiving the proposal, the defendant informed the plaintiff that the defendant had received a lower quote and indicated it wanted the plaintiff to justify its higher price. *Id.* at 137. The plaintiff sued the defendant for breach of an oral contract. *Id.* The plaintiff invoked a provision virtually identical to § 402.201(2) arguing that the contract was enforceable because the proposal constituted a confirmation of the oral contract. *Id.* at 141. The court found that the oral agreement did not come within this exception because the proposal expressly required further action by the defendant and was not binding on the plaintiff. *Id.* at 141-42. The court remarked that "[i]n order to be a confirma-

tion . . . a writing must at least indicate that a binding or completed transaction has been made*." Id.* at 142 (quotation marks omitted).[5]

This case differs significantly from *Kline Iron*. First, the invoice at issue makes no express requirement that plaintiff take further action for the *agreement* to be consummated. Rather, the invoice requires 100% payment "at time of purchase." This does not necessarily mean 100% payment is the acceptance of the offer. Second, unlike the proposal in *Kline Iron*, the invoice does not indicate that plaintiff could modify or withdraw the offer prior to the acceptance. As a result, the language of the invoice is far less clear than that of the proposal in *Kline Iron*. Third, unlike the parties' activities in *Kline Iron*, here both parties acted as if a contract had been formed despite the lack of initial payment, and Edmonds testified that after speaking to Afifi he "went out and put in an order and contracted for 4,100 parts", thereby refuting the possibility that Edmonds intended the invoice as an offer he could modify.

The evidence also supports the magistrate judge's finding that defendant received written notice of the microprocessor order and made no objection within ten days. The record contains the invoice, dated July 19, 2006,

---

[5] Defendant also cites *First Bank (N.A.) v. H.K.A. Enterprises, Inc.*, 515 N.W.2d 343 (Wis. Ct. App. 1994) to support its argument. However, the court explicitly refused to rule on the § 402.201(2) issue because the issue was not raised before the trial court. *Id.* at 347 n.10.

issued to defendant for 4,100 "Cypress U4" at $5.85. In addition, Edmonds testified that Afifi never informed him that he did not want the microprocessors or that there was any indication that Afifi would not make payment until he received an e-mail from Afifi in September 2006. As such, this court cannot find that the magistrate judge's ruling that § 402.201(2) applied to the microprocessor contract was clearly erroneous.

### C.  Amount of Damages

Defendant also argues that the district court erred in awarding damages to plaintiff because there was no proof of loss. In this regard, defendant asserts that Edmonds' testimony as to damages lacked the requisite specificity. Defendant points to disparities in Edmonds' testimony regarding plaintiff's out of pocket expenses, and the amount plaintiff had contracted to pay for the parts. However, Edmonds' failure to clarify what plaintiff had paid for the boards to date or how much its supplier charged is of little significance. As discussed above, the court had proof from Edmonds' testimony that the boards were manufactured, that the parties agreed to the prices set forth on the invoices, and that defendant failed to pay for the boards.

Wisconsin Statute § 402.709 states that,

> When the buyer fails to pay the price as it becomes due the seller may recover . . . the price . . . [o]f goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price

or the circumstances reasonably indicate that such effort will be unavailing.

Wis. Stat. § 402.709(1)(b). Here, the magistrate judge found that the parties had a contract and had agreed to the price listed in the invoices. In addition, the magistrate judge found that the goods were specially manufactured pursuant to the parties' contract such that any effort to resell them would be unavailing, and that the boards had been ordered and manufactured. This was supported by Edmonds' testimony to that effect. Moreover, Edmonds testified that defendant had never paid the contract price at issue. As such, this court cannot conclude the magistrate judge erred in awarding damages to plaintiff. Accordingly, this argument also is rejected.

### D.  Assumption of Risk

Defendant's final argument is that plaintiff assumed the risk of loss because there were no assurances made to plaintiff that defendant was committed to actually purchasing the items from plaintiff. Although not entirely clear, defendant's main point appears to be that plaintiff did not act in good faith when it went ahead with purchasing the products without the agreed upon payment, and should not be allowed damages for goods that were never delivered.

At oral argument, defendant conceded that it did not specifically raise this argument before the trial court. "[I]t is axiomatic that an issue not first presented to the district court may not be raised before the appellate

court as a ground for reversal*." Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) (quotation marks omitted). Defendant did not discuss good faith, assumption of risk or the unfairness of not receiving the goods in its pre-trial memorandum, its proposed findings of fact and conclusions of law or its post-trial brief before the trial court. Defendant did make mention of plaintiff's "commercial foolhardiness," but only in the context of its Statute of Frauds argument. *See id.* at 720-21 (holding, in the context of waiver, that a party cannot rely on a general statement made in the trial court to claim it has raised the specific argument below). Because "to reverse the district court on grounds not presented to it would undermine the essential function of the district court," *id.* at 720 (quotation marks omitted), we do not consider defendant's final argument.

### III. Conclusion

Accordingly, we AFFIRM the district court's judgment in favor of plaintiff.